B. F. Yoakum et al., Receivers, v. J. B. Dunn.

No. 42.

1. **Damages for Mental Anguish.**—The suit was for damages for injury to a museum, delivered to the defendant for shipment to Dallas for exhibition at the fair, and loss of profits by reason of failure to transport and deliver. The petition alleged that plaintiff "lost all opportunity to make money at said point by exhibiting his collection of birds, animals, etc., and lost his own time, besides the expense of keeping and paying his employes, and his trouble, vexation, and worry." Plaintiff testified, without objection, that he experienced great mental anxiety on account of the delay of the museum. Under this state of facts, the jury should have been told that the plaintiff could not recover for his mental anguish.

2. **Connecting Lines.**—The evidence failing to show that the museum was ever out of defendant's possession, it was not necessary for the plaintiff to show upon what line of railway the damage was done.

3. **Measure of Damages.**—The measure of damages for the injury to the museum would be the market value of the specimens destroyed, and the difference in value of those injured just before and just after the injury; and if there was no market value at the place where the railway received them, then their market value at the nearest point where they had a market value should be shown. The damage can not be estimated by the time it took the owner to collect them, and the value of his time.

4. **Charge on the Weight of Evidence.**—It was a charge on the weight of evidence to tell the jury that the articles had no general market value. The evidence as to the nature of the articles, and the manner of their collection and preparation, tended to show that they were all such specimens as might have a market value.

5. **Speculative and Uncertain Damages.**—The following charge was given: "If you find that by reason of the total or partial loss of some of the articles belonging to the collection or museum, the whole collection is depreciated in value, and rendered unfit for profitable exhibition, you will consider such incidents and results, for the purpose of determining the actual damage you find the plaintiff has sustained." Under the evidence in the case, this charge was error. Such depreciation could only result from a general lessening of interest in the museum, by reason of the loss of certain specimens, and as an element of damage it is too uncertain and speculative.

6. **Damages—Lost Profits.**—The plaintiff notified defendants, when he shipped the museum, of the purpose for which it was being shipped; defendant is therefore liable for such damages as plaintiff might probably sustain by reason of the failure to have the museum there for exhibition, in the way of lost profits; not eo nomine as net profits, but as damages, to be determined by ascertaining the probable net profits. And in this case, the court having authorized the jury to allow plaintiff for expenses incurred by himself and his employes, he should have defined net profits. The expense of the trip to Dallas, and board there, should have been deducted from the gross profits, if recovery of net profits eo nomine was allowed.

7. **Suit Against Receivers.**—This suit grows out of a contract made by the receivers to safely transport plaintiff's property to Dallas, and under Revised Statutes, sections 2 and 6 of Act of 1889, plaintiff had the right to sue the receivers.

Appeal from Fayette.    Tried below before Hon. H. Teichmueller.

*S. C. Patton* and *J. T. Duncan*, for appellants.—The court erred in charging the jury, to " consider the value of the articles totally or partially injured and the depreciation in value of articles not injured by reason of the loss or unfitness for use of such other articles injured and belonging to the collection.    Railway v. Simcock, 81 Texas, 503; Railway v. Curry, 64 Texas, 87.

*Phelps & Wilrich*, for appellee.—1.  The net profits were a proper basis for a recovery, for the reason that defendants had been notified by the plaintiff, at time of shipment, of the object of shipment, and his reasons for desiring the museum rushed through.

2.  Appellee was entitled to recover net profits, and also all his actual expenses paid out by him for himself and employes while at Dallas, and expenses of going there and returning.    Railway v. Hill, 63 Texas, 385.

GARRETT, Chief Justice.—Action for damages, brought March 31, 1891, in the District Court of Fayette County, by appellee, against appellants as receivers of the San Antonio & Aransas Pass Railway Company, for injury to a museum delivered to the defendants for shipment to Dallas, Texas, for exhibition at the State Fair in October, 1890; and also for loss of profits in the exhibition of the museum by reason of the failure of defendants to transport and deliver the same.

Trial was had by a jury on June 6, 1891, and verdict and judgment were in favor of the plaintiff.

Appellants assign as error the refusal of the court to give in his charge to the jury the following instruction requested by them:  " You are hereby charged that under the facts in this case the plaintiff can not recover for mental anguish, and in assessing your damage, if you find from the evidence that he is entitled to any, you will not take this into consideration."

In his petition appellee stated the damages resulting from the failure of the defendants to transport the museum expeditiously, and to have the same at Dallas at the opening of the fair, to be, that he " lost all opportunity to make money at said point by exhibiting his said collection of birds, animals, etc., and lost his own time, besides the expense of keeping and paying his employes in the city of Dallas, and his trouble, vexation, and worry."    There was no special exception addressed to the element of damage last stated, and the plaintiff testified, without objection, that he experienced great mental anxiety on account of the delay of the museum.    It is stated in the brief of appellants that counsel for plaintiff read cases to the court, in the hearing of the jury, wherein it was held that mental anguish was a proper element of damages, but this has

not been brought to our attention in such a manner that we can take notice of it. However, we think, under the circumstances, that the court should have given the instruction requested, as the jury may have been influenced in their verdict by the allegation and testimony as to the mental anguish.

The evidence does not show that the museum was ever out of the possession of the defendants, and it was last in their possession and was received from them at Muldoon; hence it was not error for the court to refuse the requested instruction requiring the plaintiff to show upon what line of railway the damage was done to the property, nor to give the instruction that under the undisputed evidence the plaintiff was entitled to recover.

Appellee was permitted to testify on the trial, over the objection of the appellants, as shown by their bill of exception, that it took him ten years to collect the various specimens in his museum, and that his services were worth $1000 a year. The objection to this evidence, that the value of the museum, or the damage thereto, could not be measured by the time devoted to the preparation or acquisition of the specimens composing it by the plaintiff, was well taken; for the measure of damage for the injury to the specimens would be the market value of such as might have been destroyed, and the difference in value of such specimens as may have been partially injured, just before the injury and just after. If the articles destroyed or injured had no market value at Muldoon, then the market value of such articles at the nearest place where they had a market value should be shown. If it should be shown by the evidence that the specimens had no market value, then it would be proper to show what they could be replaced or repaired for. It is very probable that the specimens composing the plaintiff's museum had no market value in Muldoon, Fayette County, but we have no doubt but that there are places where such specimens could be bought, and that there are persons who could furnish them at an expense which could be approximately estimated. It certainly would not be admissible to show how much time and labor it cost plaintiff to gather them, when from various causes he may have expended more upon them than it would take to replace them, or than they would be worth in the market where they could be had.

The charge of the court, that the articles had no general market value, was clearly error as upon the weight of the evidence. While there was some testimony that they had no market value, still the evidence as to the nature of the articles, and the manner of their collection and preparation, tended to show that they were all such specimens as might have a market value.

The third division of the charge, to the effect that the depreciation in value of the articles not injured, caused by injury to other articles, submitted an element of damages too speculative and uncertain; because

such injury or depreciation could only result from a general lessening of interest in the museum by reason of the loss of certain specimens, there being no evidence to show any other dependence of the articles on each other for value than such as would go to make up a whole collection. As before stated, the proper measure of damages would be the injury to each article.

When plaintiff delivered his museum to the defendants for shipment to Dallas, he notified their agent of the purpose for which it was being shipped, and such notice was given as would render the defendants liable for such special damage as he might probably sustain by reason of the failure to have the museum there for exhibition, in the way of lost profits therefrom. Such special damage was alleged in the petition, and the plaintiff testified in support thereof; and upon this issue the court charged the jury as follows: "In estimating the damage resulting from the failure of the defendants to ship the museum to the town of Dallas, you will consider the reasonable expenses the evidence may show the plaintiff has incurred for himself and his employes in going to and returning from Dallas, and during the time he remained in Dallas awaiting the arrival of the museum shipped. The plaintiff is also entitled to recover whatever net profits the evidence shows he may have earned by the exhibition of the said museum, if it had been transported without delay and with due expedition, according to agreement."

Appellants contend that the plaintiff was not entitled to recover the probable net profits of an exhibition of the museum at the Dallas fair, because they would be too speculative and uncertain. Perhaps he would not be entitled to recover them as net profits, but he would be entitled to recover for the value of the use of the property at such place and time, and such value could not be more properly determined than by ascertaining what the probable net profits of the exhibition would have been. In the charge complained of, the court having directed the jury that plaintiff was entitled to recover the reasonable expenses incurred for himself and employes, as well as the net profits of the exhibition, he should have then defined net profits; because the expenses of the trip to Dallas and board there would have been expenses attending the exhibition, and if plaintiff should recover them eo nomine, as already having been paid out, they should be deducted, with the other expenses, from the gross receipts.

The admission of the evidence of W. L. Moore, that the plaintiff had refused to sell the collection, was error.

By the Act of 1889, amending sections 2 and 6 of the Act of 1887, all moneys that come into the hands of a receiver are made subject, among other obligations, "to the payment of all claims and accounts against the receiver on contracts made by the receiver during the receivership." The suit of plaintiff grows out of a claim on a contract to safely transport the plaintiff's property to Dallas, as stipulated in a bill of lad-

ing. Authority to sue the receiver is granted by the statute, and the Act of 1889 makes "all judgments rendered against a receiver on causes of action arising during the receivership" a lien on all the property in his hands, superior to the mortgage lien. Plaintiff had authority under the statute to sue the receivers upon the cause of action as stated by him.

The application for a continuance failed to show what the facts were that constituted due diligence in ascertaining the defense; and it also might have shown that defendants' counsel informed the sheriff, when he placed the subpœna in his hands, where the witness could be found, as it showed that the witness was a transient person, then temporarily to be found in Fayette; but as the case must be reversed for other errors, we do not pass on the sufficiency of the application further than as indicated, and do not base the reversal on it.

For the errors indicated, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered December 1, 1892.