The CITY OF TYLER, Petitioner,

v.

Adeline LIKES, Respondent.

No. 95–1014.

Supreme Court of Texas.

Argued Sept. 3, 1996.

Decided Dec. 11, 1997.

Rehearing Overruled Feb. 13, 1998.

**490**

Gregory P. Grajczyk, Longview, for Petitioner.

Willis Jarrel, Jr., Tyler, for Respondent.

PHILLIPS, Chief Justice, delivered the opinion of the Court, in which GONZALEZ, HECHT, ENOCH, OWEN, BAKER, ABBOTT and HANKINSON, Justices, join.

This is a suit for flood damage brought against a municipality under the Texas Tort Claims Act, common law, and the Texas Constitution. Floodwaters flowing through a municipal culvert system constructed before the Legislature passed the Tort Claims Act damaged plaintiff's home. The primary issue is whether plaintiff may recover from the City for mental anguish resulting from the flood. Additionally, we consider whether plaintiff may recover 1) for property loss due to the City's negligent proprietary activities before the Legislature brought storm sewer operation under the Tort Claims Act by re-

classifying it as a governmental function in 1987, 2) for common law nuisance, or 3) for unconstitutional taking of property for public use. The trial court granted summary judgment for the City on all plaintiff's claims, but the court of appeals reversed and remanded the entire case for trial. *Likes v. City of Tyler*, 910 S.W.2d 525 (Tex.App.—Tyler 1995). The City applied to this Court for writ of error.

We hold that plaintiff in this case cannot recover damages for mental anguish arising out of harm to her property. We further hold that the City established its right to summary judgment on plaintiff's causes of action based on nuisance, taking, and any negligent conduct occurring after the effective date of the Tort Claims Act in 1970. However, because we also hold that the City did not establish its right to summary judgment on plaintiff's common law action for negligent pre–1970 construction of its culvert system, we remand this cause to the trial court for further proceedings on that issue.

## I

During the early morning hours of April 5, 1986, heavy rains flooded the Azalea District watershed in Tyler, Texas. An open drainage channel running across Adeline Likes's property directed water through two drainage culverts just east of her property. That morning, floodwaters overflowed from the channel, sending a neighbor's landscape timber crashing through a window in Likes's split-level home. Three and one-half feet of water and debris entered the lower floor.

Likes, asleep upstairs during the flooding, discovered the damage at 5:30 a.m. when she went downstairs for the morning paper. There was no longer any standing water in the house, but the floodwaters had ruined the walls, carpet, furniture, and various assets of her interior decorating business. Additionally, the water had destroyed Likes's personal records, family correspondence, family photographs and keepsakes, and damaged her two automobiles parked in the driveway.

Likes sued the City of Tyler for negligently constructing and maintaining the culverts, negligently diverting water onto her property, and unconstitutionally taking her property for public use without compensation. Likes further pleaded that the City intentionally or negligently committed acts that caused a nuisance, but she did not plead that the operation of the culvert system was a nuisance by virtue of being abnormal or out of place in its surroundings.

Initially, Likes sought only to recover $100,000—the statutory maximum under the Tort Claims Act for property damage. Later, she amended her complaint to allege an additional $150,000 in mental anguish damages "from the loss of many personal irreplaceable items" and "because of her feelings of insecurity both for her home, personal property and personal safety during times of rainfall." Together, the two claims totaled the Tort Claims Act's maximum liability cap for personal injury and property damage. *S ee* TEX. CIV. PRAC. & REM.CODE § 101.023(a).

The City moved for summary judgment on the basis that sovereign immunity barred Likes's negligence claims. According to the City, the Tort Claims Act did not waive immunity for Likes's claims because she did not plead any property damages caused by the operation or use of a motor vehicle and because mental anguish is not a "personal injury" under the Act. *See id.* § 101.021. Moreover, the City argued that common law sovereign immunity barred Likes's claim for pre–1970 negligent construction of the culverts. *See id.* § 101.061. It also moved for summary judgment on Likes's nuisance and unconstitutional taking claims, supported by affidavits that it did nothing intentionally to divert the water to Likes's property. The trial court granted the City's entire motion for summary judgment.

Likes appealed each of the City's grounds for summary judgment, contesting all of the City's arguments except that her claim for property damages did not come within section 101.021 of the Tort Claims Act. The court of appeals reversed, holding that Likes's alleged mental anguish was a personal injury compensable under the Tort Claims Act. The court did not reach Likes's claims that the City was liable for property damages caused by its proprietary activities, that the Tort Claims Act's 1987 reclassification of

storm sewer operation as a governmental function was unconstitutional, or that the City's actions were a nuisance and an unconstitutional taking. We granted the City's application for writ of error.

## II

■ Under the Tort Claims Act, a governmental unit is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE § 101.021. Both parties apparently assume that improper construction or maintenance of the culverts, if proven, would constitute a condition or use of tangible real property that could subject the City to liability for resulting personal injuries. The flood damage to Likes's home did not arise from the use of a motor vehicle or motor-driven equipment, however, so she cannot avail herself of the Act's waiver of immunity for property damages. The court of appeals held that Likes's mental anguish is compensable as a personal injury and that she is therefore entitled to a trial because the Legislature has waived the City's sovereign immunity for such a claim.

The City argues that "personal injury" is a term of art in the Tort Claims Act that cannot include mental anguish derived from property damage, unaccompanied by physical injury. It points to *Callaway v. City of Odessa*, 602 S.W.2d 330 (Tex.Civ.App.—El Paso 1980, no writ), in which plaintiffs attempted to recover damages from a municipality for "annoyance and discomfort" resulting from a sewage back-up. In *Callaway* the

court stated, "We hold that the annoyance and discomfort suffered by the Plaintiffs for the impairment of the use and enjoyment of their property in this case involves property damages, and is not covered by the Texas Tort Claims Act.... At best, the jury award was for mental anguish alone under circumstances where those damages cannot be recovered." *Callaway,* 602 S.W.2d at 334 (citations omitted). As in *Callaway,* the City reasons that Likes's mental anguish claim is merely derivative of her property damage claim, which is not actionable.

■ In evaluating these contentions it is important to remember that the Tort Claims Act does not create a cause of action; it merely waives sovereign immunity as a bar to a suit that would otherwise exist. Thus, unless Likes would have a claim for mental anguish under common law against a private defendant, we need not reach the question of whether mental anguish is a "personal injury" for which the Legislature has waived the City's sovereign immunity.

■ Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish. *See Boyles v. Kerr,* 855 S.W.2d 593, 597 (Tex.1993). While negligently inflicted anguish may be an element of recoverable damages when the defendant violates some other duty to the plaintiff, this depends on both the nature of the duty breached and the quality of proof offered by the plaintiff. For many breaches of legal duties, even tortious ones, the law affords no right to recover for resulting mental anguish. *See, e.g., id.* at 598 (noting that mental anguish is not recoverable in an action for negligent misrepresentation). Likes alleges that the City caused her mental anguish by negligently flooding her house and causing "the loss of many personal and irreplaceable items." The first question in this case, then, is whether the law imposes mental anguish damages for a breach of the duty to exercise ordinary care so as not to negligently injure another's property.

Although mental anguish is a real and serious harm, there are two principal reasons why courts are not willing to recognize it as a compensable element of damages in every

case where it occurs. First, it is difficult to predict. The invasion of the same legal right may lead to extreme anguish in one person while causing essentially no emotional damage to another. Because of this variability in human nature, it is difficult for the law to distinguish between those instances when mental anguish is reasonably foreseeable from particular conduct and those when it is so remote that the law should impose no duty to prevent it. For this reason, Texas courts at one time categorized mental anguish in most types of cases as too remote or speculative to be compensable as actual damages, holding the emotional consequences of the tort relevant only to exemplary damages. *See Crawford v. Doggett*, 82 Tex. 139, 17 S.W. 929, 930 (1891) (citing *Traweek v. Martin–Brown Co.*, 79 Tex. 460, 14 S.W. 564, 565–66 (1890)); *Bassham v. Evans*, 216 S.W. 446, 451 (Tex.Civ.App.—Amarillo 1919, no writ); 1 SEDGWICK, A TREATISE ON THE MEASURE OF DAMAGES § 359, at 705–06 (9th ed.1913). *But see Stuart v. Western Union Tel. Co.*, 66 Tex. 580, 18 S.W. 351, 354 (1885) (when mental anguish is the natural result of an injury, it is included in actual damages).

Second, even in circumstances where mental anguish is a foreseeable result of wrongful conduct, its existence is inherently difficult to verify. For years the fear of false claims led us to require objective bodily symptoms of anguish in most types of cases. We eliminated this "physical manifestation" requirement after concluding that physical symptoms are not an accurate indicator of genuine mental anguish. *See Boyles*, 855 S.W.2d at 598; *St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649, 650 (Tex.1987), *overruled on other grounds by Boyles*, 855 S.W.2d 593. Yet even. in those cases where a defendant has breached the type of duty for which mental anguish is recoverable, we frequently demand "direct evidence of the nature, duration, and severity of [the] mental anguish, ... establishing a substantial disruption in the plaintiffs' daily routine." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995). While we recognize that such artificial evidentiary barriers as the *Parkway* standard may merely encourage exaggeration and penalize those who deal constructively with life's vicissitudes, we continue to insist on such safeguards because

the law has not yet discovered a satisfactory empirical test for what is by definition a subjective injury.

■■■ These considerations, filtered over decades and centuries through the common law process, have led most courts to conclude that there are some categories of cases in which the problems of foreseeability and genuineness are sufficiently mitigated that the law should allow recovery for anguish. Mental anguish damages are recoverable for some common law torts that generally involve intentional or malicious conduct such as libel, *see Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex.1984), and battery, *see Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex.1967), and by analogy for knowing violations of certain statutes such as the Deceptive Trade Practices Act, *see Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 117 (Tex.1984). This is appropriate because the high level of culpability affects the determination of proximate cause, *see* RESTATEMENT (SECOND) OF TORTS §§ 435B, 502(2) (1965), and makes it just that the defendant should bear the risk of any overcompensation that an award of mental anguish damages in a particular case might entail. However, Likes has not alleged that the City intended or knew that its actions would result in the flooding of her home, or that it acted with malice.

■■■ Moreover, even where the defendant's conduct was merely negligent, "Texas has authorized recovery of mental anguish damages in virtually all personal injury actions." *Krishnan v. Sepulveda*, 916 S.W.2d 478, 481 (Tex.1995). "Where serious bodily injury is inflicted, ... we know that some degree of physical and mental suffering is the necessary result." *Brown v. Sullivan*, 71 Tex. 470, 10 S.W. 288, 290 (1888); *accord T. & P. Ry. v. Curry*, 64 Tex. 85, 87–88 (1885); *Kennedy v. Missouri Pac. R.R.*, 778 S.W.2d 552, 557 (Tex.App.—Beaumont 1989, writ denied); *Texas & N.O. R.R. Co. v. Cade*, 351 S.W.2d 663, 664 (Tex.Civ.App.—Waco 1961, writ ref'd n.r.e.). Similarly, when the defendant's negligence causes a mental shock which produces a serious bodily injury, the defendant is liable for that injury provided it

was foreseeable, *see Houston Elec. Co. v. Dorsett,* 145 Tex. 95, 194 S.W.2d 546 (1946) (plaintiff suffered "brain deterioration" after almost being struck by a bus); *Hill v. Kimball,* 76 Tex. 210, 13 S.W. 59 (1890) (plaintiff miscarried after witnessing violent altercation), and mental anguish is one element of damages just as it would be for any other serious injury. Likes has not claimed damages for bodily injury, however, and the minor physical symptoms she describes, such as difficulty sleeping, are not serious bodily injuries that can form the basis for recovering mental anguish damages.

 Mental anguish is also compensable as the foreseeable result of a breach of duty arising out of certain special relationships. *See Boyles,* 855 S.W.2d at 600. These include the physician-patient relationship, *see Krishnan,* 916 S.W.2d at 482, perhaps because most physicians' negligence also causes bodily injury, and a very limited number of contracts dealing with intensely emotional noncommercial subjects such as preparing a corpse for burial, *see Pat H. Foley & Co. v. Wyatt,* 442 S.W.2d 904 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.), or delivering news of a family emergency, *see Stuart,* 66 Tex. 580, 18 S.W. 351. In an earlier era, courts found a special relationship of this sort between railroads and their passengers. *See Gulf, C. & S.F. Ry. v. Luther,* 40 Tex.Civ.App. 517, 90 S.W. 44, 46–48 (1905, writ ref'd) (collecting authorities). We have made it clear, however, that most relationships, whether legal or personal, create no duty to avoid causing mental anguish. *See Motor Express, Inc. v. Rodriguez,* 925 S.W.2d 638, 639 (Tex.1996) (landowner-invitee relationship); *Boyles,* 855 S.W.2d at 600 (intimate relationship). There is no suggestion in this case of any special relationship that could impose such a duty on the City with respect to Likes.

 Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, we permit recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result. These include suits for wrongful death, *see Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 551 (Tex. 1985), and actions by bystanders for a close family member's serious injury, *see Freeman v. City of Pasadena,* 744 S.W.2d 923 (Tex. 1988). Likes has not experienced any of the injuries that this Court has recognized as giving rise to mental anguish damages based on their shocking and disturbing nature.

The preceding analysis is obviously far from exhaustive, for the law of mental anguish damages is rooted in societal judgments, some no longer current, about the gravity of certain wrongs and their likely effects. As a result of this "ad hoc pattern of development," *Parkway,* 901 S.W.2d at 443, "[t]he case law in the field … is in an almost unparalleled state of confusion and any attempt at a consistent exegesis of the authorities is likely to break down in embarrassed perplexity." Shipley, Annotation, *Right to Recover for Emotional Disturbance or Its Physical Consequences, in the Absence of Impact or Other Actionable Wrong,* 64 A.L.R.2d 100, 103 (1959). Our opinion today does not attempt the perhaps impossible task of distilling a unified theory of mental anguish from the existing precedents. Instead, we seek merely to erect a framework of existing case law to assist in examining the claim before us. From that process, it is clear that the present case falls outside the types of cases in which mental anguish has traditionally been compensable under Texas or prevailing American law.

In remanding for a trial on the merits, the court of appeals concluded that "mental anguish [was] self-evident in the nature of [Likes's] experience," 910 S.W.2d at 529—in other words, that the flooding of one's home and possessions is one of those extremely shocking and disturbing injuries which guarantee the genuineness and foreseeability of mental anguish despite the absence of willful or malicious misconduct, serious bodily injury, or a special relationship between the parties. We disagree.

While few persons suffering serious bodily injury would feel made whole by the mere recovery of medical expenses and lost wages, many whose property has been damaged or destroyed will be entirely satisfied by recov-

ery of its value. As a rule, this is measured by the property's market value or the cost of repairing it. *See Pasadena State Bank v. Isaac,* 149 Tex. 47, 228 S.W.2d 127, 128–29 (1950). In some cases, however, the damaged property consists of "articles of small market value" that "have their primary value in sentiment." *Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299, 304–05 (Tex.1963). Such property can only be adequately valued subjectively; yet, the owner should still be compensated. As the Court discussed in *Brown,* special rules apply in a suit to recover for the loss of property that is primarily of sentimental value:

> It is a matter of common knowledge that items such as these generally have no market value which would adequately compensate their owner for their loss or destruction. Such property is not susceptible of supply and reproduction in kind, and their greater value is in sentiment and not in the market place. In such cases the most fundamental rule of damages that every wrongful injury or loss to persons or property should be adequately and reasonably compensated requires the allowance of damages in compensation for the reasonable special value of such articles to their owner taking into consideration the feelings of the owner for such property.

*Id.* at 305 (citations omitted). The owner's feelings thus help determine the value of the destroyed item to the owner for purposes of property, not mental anguish, damages. Because a plaintiff whose property has been harmed can ordinarily recover fully for that loss through economic damages, our reluctance to leave a legally injured plaintiff with no remedy at all, which has rightfully influenced courts to look favorably on awarding mental anguish damages, does not come into play in cases where the primary injury is to property. *See Sanchez v. Schindler,* 651 S.W.2d 249, 251 (Tex.1983) (permitting mental anguish damages for wrongful death of a child because the traditional pecuniary loss rule would result in an award of no damages).

■ For these reasons, we reaffirm today that damages measured by diminution in value are an adequate and appropriate reme-

dy for negligent harm to real or personal property, and that mental anguish based solely on negligent property damage is not compensable as a matter of law. The proper measure of Likes's damages—although she cannot recover on those claims for which the City has sovereign immunity from suit for property damages—is (1) the loss in market value of her property caused by the defendant's negligence and (2) for those items of small or no market value that "have their primary value in sentiment," *Brown v. Frontier Theatres,* 369 S.W.2d at 305, the loss in value to her. Because the injury to Likes's property was not intentional or malicious, or even grossly negligent, we need not decide whether mental anguish arising out of property damage may be legally compensable when a heightened degree of misconduct is found. *Compare Luna,* 667 S.W.2d at 117 (stating in dicta that mental anguish is recoverable for "willful tort, willful and wanton disregard, or gross negligence"), *with Reinhardt Motors, Inc. v. Boston,* 516 So.2d 509, 511 (Ala.1986) (limiting mental anguish for property damage to cases in which the injury "is committed under circumstances of insult or contumely" and thus constitutes a tort against the plaintiff personally rather than a mere property tort).

In attempting to create general rules for this complex field, we have sometimes uttered dicta that might support Likes's position. Two of our early cases establishing that one cannot recover for mental anguish in the absence of a recognized legal injury—what we now know as the rule of *Boyles v. Kerr*—suggested in passing that an injury to property would suffice. *See Stuart,* 18 S.W. at 353; *Gulf, C. & S.F. Ry. v. Levy,* 59 Tex. 563, 566 (1883). We soon rejected this suggestion, however, when we were actually called on to decide claims for mental anguish arising out of injuries to property interests. *See Gulf, C. & S.F. Ry. v. Trott,* 86 Tex. 412, 25 S.W. 419 (1894) (negligently frightening horses so that they broke plaintiff's wagon); *Crawford,* 82 Tex. 139, 17 S.W. 929 (wrongful but nonmalicious sequestration of home); *Houston, E. & W.T. Ry. Co. v. Seale,* 28 Tex.Civ.App. 364, 67 S.W. 437 (1902, no writ) (damage to personal property during ship-

ment); *Yoakum v. Dunn*, 1 Tex.Civ.App. 524, 21 S.W. 411 (1892, no writ) (same).

Although this Court has not considered a mental anguish claim based solely on negligent damage to property since the beginning of the century, we have consistently and recently held that without proof of heightened culpability, mental anguish is not recoverable under other causes of action for injuries to economic rights such as breach of contract, *see Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 72 (Tex.1997), negligent misrepresentation, *see Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442–43 (Tex.1991), and violations of statutory regulatory schemes like the Insurance Code, *see State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 436 (Tex.1995), or the Deceptive Trade Practices Act, *see Duncan v. Luke Johnson Ford, Inc.*, 603 S.W.2d 777, 779 (Tex.1980).

The courts of appeals have likewise held, with the exception of the cases on which the court below relied, that mental anguish is not a compensable result of injuries to property interests. *See, e.g., First Nat'l Bank v. Gittelman*, 788 S.W.2d 165 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (conversion without malice). Notably, the courts of appeals have repeatedly denied recovery in cases where, as here, the plaintiffs' mental anguish arose out of legal injuries involving the home and its contents. *See Conann Constructors, Inc. v. Muller*, 618 S.W.2d 564 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.) (breach of warranty involving septic system

leakage onto lawn); *Callaway*, 602 S.W.2d 330 (negligent maintenance of sewer causing sewage backup into house); *National Van Lines, Inc. v. Lifshen*, 584 S.W.2d 298 (Tex. Civ.App.—Dallas 1979, no writ) (non-willful [1] DTPA violation resulting in damage to household goods); *Phillips v. Latham*, 523 S.W.2d 19, 26–27 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.) (wrongful trustee's sale of plaintiffs' home when plaintiffs were not in default on deed of trust); *Rogowicz v. Taylor & Gray, Inc.*, 498 S.W.2d 352, 355–56 (Tex. Civ.App.—Tyler 1973, writ ref'd n.r.e.) (breach of warranty involving defects in foundation of house); *Hunt v. Weems*, 208 S.W.2d 423 (Tex.Civ.App.—Austin 1948, writ dism'd) (forcible detainer of apartment).

The court below relied on three court of appeals cases for its holding that "mental anguish is self-evident" and therefore recoverable in cases involving negligent property damage. 910 S.W.2d at 528–29. Those cases were *Shade v. City of Dallas*, 819 S.W.2d 578 (Tex.App.—Dallas 1991, no writ) (house flooded with sewage); *Brown & Root, Inc. v. City of Cities Mun. Util. Dist.*, 721 S.W.2d 881 (Tex.App.—Houston [1st Dist.] 1986, no writ) (cracks in walls and foundation of home); and *Parr Golf, Inc. v. City of Cedar Hill*, 718 S.W.2d 46 (Tex.App.—Dallas 1986, no writ) (business flooded with sewage). The rationales that *Shade*, *Brown & Root*, and *Parr Golf* offered for allowing mental anguish damages are either flawed, outdated, or inapplicable to the present case.[2]

---

**1.** Since 1995, the DTPA expressly provides that mental anguish damages are recoverable only if the defendant acted knowingly or intentionally. *See* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 5, 1995 Tex. Gen. Laws 2988, 2992 (codified at Tex. Bus. & Com.Code § 17.50(b)(1)). This codifies our holding in *Luna*, where we decided that the DTPA's standard of culpability for recovery of treble damages—"knowingly" committing a deceptive trade practice—was also the proper standard for mental anguish damages. *See* 667 S.W.2d at 117–18. Before that requirement was added in 1979, *see* Act of May 16, 1979, 66th Leg., R.S., ch. 603, § 4, 1979 Tex. Gen. Laws 1327, 1330, the DTPA made no reference to the defendant's mental state, so courts determined the availability of mental anguish damages by analogy to the common law under a standard of "willful" misconduct, *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex. 1980), or "willful tort, gross negligence, [or] willful disregard," *Duncan*, 603 S.W.2d at 779.

**2.** While none of these three cases expressly relied on the now-defunct tort of negligent infliction of emotional distress, they may have been influenced by the availability of that cause of action in the jurisprudence of the time. Under a theory of negligent infliction of emotional distress, the plaintiffs in those cases could have sued for their mental anguish without proving any legal injury to their persons, property, or other protected interests. Although *Parr Golf* and *Brown & Root* predate by a year this Court's recognition of a cause of action for negligent infliction of emotional distress, at least one court of appeals had announced its existence by the time they were decided. *See Garrard v. St. Elizabeth Hosp.*, 708 S.W.2d 571, 572 (Tex.App.—Beaumont 1986), *aff'd*, 730 S.W.2d 649, *overruled by Boyles*, 855 S.W.2d at 597.

*Parr Golf* began from the premise that "in a simple negligence case proof of physical injury is necessary to sustain an award of damages for mental anguish," and held that the claim for mental anguish could proceed on the sole grounds that the plaintiff had presented evidence of nausea, sleeplessness, and aggravation of his high blood pressure. *Parr Golf*, 718 S.W.2d at 48. This analysis failed to recognize that the quantum of proof—governed at that time by the physical manifestation rule, now by *Parkway*'s evidentiary requirements—does not become relevant unless the plaintiff has established a breach of a duty for which mental anguish damages are recoverable. Because it confused proof of harm with liability, *Parr Golf* did not discuss the question that is before us today: whether a breach of the duty to exercise care in the operation of a drainage system so as not to negligently injure another's property can give rise to damages for mental anguish.

The court of appeals in *Brown & Root* held, without fully explaining its reasoning, that the case fell within an exception to the physical manifestation requirement for situations where "mental anguish is self-evident in the nature of [the] act[ ]." *Brown & Root*, 721 S.W.2d at 884–85. It pointed out that mental anguish is recoverable for many intentional or willful torts, and mentioned a fact that might have been construed as evidence of willful misconduct—the defendants had failed to respond to numerous complaints about the gradual deterioration of the plaintiffs' house—but never stated expressly that this evidence was the basis for awarding mental anguish damages. To the extent that *Brown & Root* was based on a finding that the defendants acted willfully, then even if correctly decided, it is not controlling in the present action for negligence only. *Brown & Root* can also be read, however, to mean that mental anguish is self-evident in the nature of merely negligent property damage. The court of appeals in *Shade* gave *Brown & Root* this interpretation, citing that case for the proposition that "[i]f the City were found to be negligent, [the plaintiff] could recover mental anguish damages." *Shade*, 819 S.W.2d at 582. For the reasons discussed above, we disapprove of *Shade* and *Brown &*

*Root* to the extent that they hold mental anguish is recoverable when it arises from negligent property damage.

Our holding today is in no way inconsistent with our recent decision in *Parkway Co. v. Woodruff*. In that case, we explicitly emphasized the limited nature of our inquiry: "[W]e are focusing only on the type of evidence required to support an award of mental anguish damages in cases in which recovery is allowed." *Parkway*, 901 S.W.2d at 442. The Court did not find it necessary to consider whether mental anguish was recoverable for negligent property damage. The court of appeals had rested its decision on the legal insufficiency of the plaintiffs' evidence of mental anguish, *Parkway Co. v. Woodruff*, 857 S.W.2d 903, 914–16 (Tex. App.—Houston [1st Dist.] 1993), and we simply affirmed on the same grounds. In fact, we hinted at today's decision when we pointed out the distinction between the "disturbing or shocking injuries" for which mental anguish has traditionally been recoverable and mere negligent property damage, observing that "[w]hile the flooding of the Woodruffs' home certainly disrupted their lives temporarily, under our substantive law this type of disruption will not support an inference that compensable mental anguish occurred." *Id.* at 445.

Our decision today accords with the overwhelming majority of American jurisdictions. *See* RESTATEMENT (SECOND) OF TORTS § 911 cmt. e (1979) ("Compensatory damages are not given for emotional distress caused merely by the loss of ... things...."); 1 DOBBS, LAW OF REMEDIES § 5.15(1) at 876 (2d ed. 1993) ("In general, the owner of damaged property cannot recover damages for emotional distress as an element of damage to the property."); Shipley, Annotation, *Recovery for Mental Shock or Distress in Connection with Injury to or Interference with Tangible Property*, 28 A.L.R.2d 1070, 1078 (1953) ("[T]he courts in general appear to be extremely reluctant to allow recovery for mental disturbance occasioned by a merely negligent injury to chattels."). Numerous states in recent years have considered claims for mental anguish on facts similar to the ones in this case. Although a few states

allow recovery in such cases, *see Riggins v. Dixie Shoring Co.*, 577 So.2d 1060 (La.App.) (plaintiff witnessed damage to house during levelling), *rev'd on other grounds*, 590 So.2d 1164 (La.1991); *Edwards v. Talent Irrigation Dist.*, 280 Or. 307, 570 P.2d 1169 (1977) (flooding of garden), most hold that as a matter of law mental anguish is not compensable in an action for negligent property damage where the plaintiff is not physically injured. *See Hayes v. Newton Bros. Lumber Co., Inc.*, 481 So.2d 1123 (Ala.1985) (mobile home damaged by fire); *Lubner v. City of Los Angeles*, 45 Cal.App.4th 525, 53 Cal. Rptr.2d 24 (1996, rev.denied) (truck crashed into home destroying artworks made by plaintiffs); *Dobbins v. Washington Suburban Sanitary Comm'n*, 338 Md. 341, 658 A.2d 675 (1995) (flooding of home); *Day v. Montana Power Co.*, 242 Mont. 195, 789 P.2d 1224 (1990) (restaurant damaged by leaking gas tanks); *Smith v. Clough*, 106 Nev. 568, 796 P.2d 592 (1990) (vehicle driven into house); *Caprino v. Silsby*, 226 A.D.2d 1078, 642 N.Y.S.2d 120 (1996) (home struck by vehicle); *McMeakin v. Roofing & Sheet Metal Supply Co.*, 807 P.2d 288 (Okla.App.1990) (house collapsed when bricks piled on roof); *Evans v. Mutual Mining*, 199 W.Va. 526, 485 S.E.2d 695 (1997) (flooding of home); *Blagrove v. JB Mechanical, Inc.*, 934 P.2d 1273 (Wyo.1997) (flooding of home). In Hawaii, the Supreme Court ruled at one point that mental anguish damages were recoverable as a foreseeable result of the negligent flooding of a house, *see Rodrigues v. State*, 52 Haw. 156, 52 Haw. 283, 472 P.2d 509 (1970), but the state legislature in 1986 reversed that policy, enacting a statute barring liability for negligent infliction of emotional distress based solely on damage to property, HAW.REV.STAT. ANN. § 663–8.9 (Michie 1995).

Finally, Likes's pleadings attribute her mental anguish not only to the damaging of her property but also to "her feelings of insecurity both for her home, personal property and personal safety during times of rainfall." Since we have determined that mental anguish is not recoverable based on actual past damage to property, *a fortiori* Likes may not recover for mental anguish based on fear of future damage to her personal property and her

home. Nor may she recover damages for her fear of injury, since she was not actually injured. It has been established for over a century that "[a] person who is placed in peril by the negligence of another, but who escapes without injury, may not recover damages simply because he has been placed in a perilous position. Nor is mere fright the subject of damages." *Trott*, 25 S.W. at 420; *accord* RESTATEMENT (SECOND) OF TORTS § 436A (1965).

Because the City did not breach any duty that would subject it to liability for Likes's mental anguish if it were a private defendant, we do not decide whether mental anguish is a personal injury within the meaning of section 101.021 of the Tort Claims Act.

### III

Likes contends that regardless of our decision on her mental anguish claim, she has a viable claim for property damages because of the City's negligent construction, design, and maintenance of the culvert system before the Legislature passed the Tort Claims Act. Likes claims that the construction, operation, and maintenance of storm sewers were proprietary functions at common law before 1970, *see Dilley v. City of Houston*, 148 Tex. 191, 222 S.W.2d 992 (1949), thus entitling her to recover property damages for the City's negligence. The City counters that it is absolutely immune from liability for structures it designed and constructed before the Legislature adopted the Tort Claims Act. According to the City, governmental immunity absolutely bars a claim based on failure to improve the system, because any decision by the City to improve or not to improve existing drainage systems is a quasi-judicial exercise of its police power and a governmental function. *See City of Round Rock v. Smith*, 687 S.W.2d 300, 303 (Tex.1985) (holding that city's approval of a subdivision plat, as a discretionary function that only a governmental unit could perform, was a governmental function). The City built the culverts in question in 1925 and 1938, with no subsequent redesign or modification.

The Tort Claims Act provides: "This chapter does not apply to a claim based on an

act or omission that occurred before January 1, 1970." TEX. CIV. PRAC. & REM.CODE § 101.061. Common law thus governs causes of action based on acts occurring before that date. *See Lawrence v. City of Wichita Falls*, 906 S.W.2d 113, 116 (Tex.App.—Fort Worth 1995, writ denied); *City of Fort Worth v. Adams*, 888 S.W.2d 607, 614 (Tex.App.—Fort Worth 1994, writ denied).

■■■■ This Court explained the common law distinction between proprietary and governmental functions in *Dilley:*

At times [a municipal corporation] functions as a private corporation, and at other times it functions as an arm of the government. Therefore its liability or nonliability rests upon the following two rules:

1. When a municipal corporation acts in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government, it is liable for the negligence of its representatives.

2. A municipal corporation is not liable for the negligence of its agents and employees in the performance of purely governmental matters solely for the public benefit.

*Dilley*, 222 S.W.2d at 993 (citations omitted) (quoting *City of Houston v. Quinones*, 142 Tex. 282, 177 S.W.2d 259, 261 (1944)). Likes complains of two separate functions in her negligent construction claim. The first is the City's design and plan of the culvert system and the City's subsequent decisions about improvements. The second is the City's construction, operation, and maintenance of the culvert system.

■■■■ Governmental immunity protects a city when it exercises discretionary powers of a public nature involving judicial or legislative functions. *See City of Round Rock*, 687 S.W.2d at 302. The City's design and planning of its culvert system are quasi-judicial functions subject to governmental immunity. *See Dilley*, 222 S.W.2d at 994; *see also City of Watauga v. Taylor*, 752 S.W.2d 199, 202 (Tex.App.—Fort Worth 1988, no writ). As this Court stated in *Dilley:*

The duties of the municipal authorities in adopting a general plan of drainage, and determining when and where sewers shall be built, of what size and at what level, are of a quasi judicial nature, involving the exercise of deliberate judgment and large discretion, and depending upon considerations affecting the public health and general convenience throughout an extensive territory; and the exercise of such judgment and discretion in the selection and adoption of a general plan or system of drainage is not subject to revision by a court or jury in a private action for not sufficiently draining a particular lot of land.

*Dilley*, 222 S.W.2d at 994 (quoting *Johnston v. District of Columbia*, 118 U.S. 19, 20–21, 6 S.Ct. 923, 923–24, 30 L.Ed. 75 (1886)).

■■■■ Likes's summary judgment evidence consisted in part of a deposition transcript in which her expert criticized the culverts' inadequate design and the City's failure to improve it. Because a municipality's decision about whether to order public improvements is discretionary, its decision to initiate or not initiate such an undertaking is an exercise of governmental power for which it may not be held liable. *See* MCQUILLIN, 18 THE LAW OF MUNICIPAL CORPORATIONS § 53.22.70 (3d ed.1993).

■■■■ However, the acts of constructing and maintaining a storm sewer are proprietary at common law, both because they are performed in a city's private capacity for the benefit of those within its corporate limits and because they are ministerial functions. *See City of Round Rock*, 687 S.W.2d at 303; *Dilley*, 222 S.W.2d at 993; *City of Tyler v. Fowler Furniture Co.*, 831 S.W.2d 399, 403 (Tex.App.—Tyler 1992, writ denied); *City of Watauga*, 752 S.W.2d at 202. The City could be liable for the negligent performance of these acts if they proximately caused Likes's damages.

■■■■ Because the City did not establish as a matter of law that it was not negligent in constructing (as opposed to designing) the culvert system before 1970, it did not establish its right to summary judgment on this cause of action. Therefore, we remand this cause of action to the trial court for further proceedings.

## IV

Likes also asserts a cause of action for failure to maintain the culverts clear of debris that might interfere with the flow of water. Unlike her negligent construction claim, Likes's negligent maintenance claim is not excluded from the coverage of the Tort Claims Act because it is based on acts or omissions that necessarily occurred nearer the time of the flood, well after 1970. *See* TEX. CIV. PRAC. & REM.CODE § 101.061; *cf. Adams*, 888 S.W.2d at 614. Common law classified operation and maintenance of storm sewers as proprietary functions for which a municipality could be sued. *See Dilley*, 222 S.W.2d at 993. However, the amended version of the Tort Claims Act reclassifies the operation of storm sewers as a governmental function for all suits filed on or after September 2, 1987. *See* TEX. CIV. PRAC. & REM.CODE § 101.0215(a)(9); Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 4.05, 1987 Tex. Gen. Laws 37, 51. Because Likes did not file her suit until after the amended version became effective, the City is immune from liability for her property damage claim. *See* TEX. CIV. PRAC. & REM.CODE § 101.021(2).

Likes argues that applying the immunity provisions of the amended Tort Claims Act to this case violates article I, section 16 of the Texas Constitution, which provides: "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." She claims that she had a vested common law cause of action when the flood occurred, which is protected by article I, section 16. Likes argues that because the Act applies to all suits filed on or after the September 2, 1987, effective date of the amendment, regardless of when the claim accrued, it impermissibly cuts off her right to bring a claim for property damage. *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 4.05, 1987 Tex. Gen. Laws 37, 51. Likes filed this action on March 31, 1988, before the limitations period on her common law claims expired. She asserts that applying the Tort Claims Act as an affirmative defense or limitation to her recovery is retroactive and unconstitutional.

A statute is retroactive if it takes away or impairs vested rights acquired under existing law. *See McCain v. Yost*, 155 Tex. 174, 284 S.W.2d 898 (1955). This Court has stated:

> Facts may exist out of which, in the course of time or under given circumstances, a right would become fixed or vested by operation of existing law, but until the state of facts which the law declares shall give a right comes into existence there cannot be in law a right; and for this reason it has been constantly held that, until the right becomes fixed or vested, it is lawful for the law-making power to declare that the given state of facts shall not fix it, and such laws have been constantly held not to be retroactive in the sense in which that term is used.

*Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249, 253 (1887). However, laws affecting a remedy are not unconstitutionally retroactive unless the remedy is entirely taken away. *See De Cordova v. City of Galveston*, 4 Tex. 470, 480 (1849). Like a statute of limitations, a statute defining a municipality's sovereign immunity affects a plaintiff's remedy. The Legislature can affect a remedy by providing a shorter limitations period for an accrued cause of action without violating the retroactivity provision of the Constitution if it affords a reasonable time or fair opportunity to preserve a claimant's rights under the former law, or if the amendment does not bar all remedy. *See generally Texas Water Rights Comm'n v. Wright*, 464 S.W.2d 642, 649 (Tex.1971); *Mellinger*, 3 S.W. at 254–55. Here, the Legislature affected the remedy but allowed Likes a reasonable time to preserve her rights. The Legislature passed the reclassifying act on June 3, 1987, and the Governor signed it on June 16, to go into effect on September 2 of that year. Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2 § 4.05, 1987 Tex. Gen. Laws 37, 51. Because Likes's cause of action accrued on April 5, 1986, she had seventeen months to file her lawsuit before the new law barred her claim, and she had more than two months from the time the change was made until the reclassification became effective. Therefore, the statute was not unconstitutionally retroactive as applied to her.

Likes also argues that the legislative reclassification of municipal storm sewer operation as a governmental function violates the open courts provision of the Texas Constitution. *See* TEX. CONST. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."). This provision includes at least three different guarantees: "1) courts must actually be operating and available; 2) the Legislature cannot impede access to the courts through unreasonable financial barriers, and 3) ... ' ... the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress.'" *Trinity River Auth. v. URS Consultants, Inc.—Tex.*, 889 S.W.2d 259, 261 (Tex.1994) (quoting *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 448 (Tex.1993)). Likes's argument relates only to the third guarantee.

Since the common law recognized a right of action against a municipality for negligence in the proprietary function of storm sewer operation, *see Dilley*, 222 S.W.2d at 993–95, the open courts provision standing alone would allow the Legislature to eliminate that cause of action only if it met *Trinity River*'s balancing test. We need not decide, however, whether the reclassification of storm sewer maintenance as a governmental function violates article I, section 13, because another constitutional provision specifically empowers the Legislature to abrogate common law rights of action against municipalities. In 1987 the people adopted article XI, section 13, which provides:

(a) Notwithstanding any other provision of this constitution, the legislature may by law define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law.

(b) This section applies to laws enacted by the 70th Legislature, Regular Session, 1987, and to all subsequent regular or special sessions of the legislature.

TEX. CONST. art. XI, § 13. This constitutional amendment effectively creates an exception to the open courts provision's third guarantee by authorizing the Legislature to change the common law classifications of municipal functions as proprietary or governmental, and thus to grant municipalities immunity from certain suits that could have been maintained at common law. Article XI, section 13 therefore precludes Likes's open courts argument. Because we have already concluded that section 101.0215 of the Tort Claims Act was not unconstitutionally retroactive as applied to Likes, we need not decide whether and to what extent article XI, section 13 would defeat a valid claim of unconstitutional retroactivity.

We therefore hold that the Act's provision reclassifying the formerly proprietary functions of storm sewer operation and maintenance as governmental functions does not violate Likes's rights under either the open courts provision or the retroactivity provision of the Texas Constitution.

### V

Alternatively, Likes argues that because her claims are based on non-negligent nuisance, she has a claim for which she can recover property damages. *See City of Texarkana v. Taylor*, 490 S.W.2d 191, 194 (Tex. Civ.App.—Texarkana 1972, writ ref'd n.r.e.). Because the court of appeals remanded all of Likes's causes of action to the trial court, it did not directly discuss this claim.

Courts have broken actionable nuisance into three classifications: negligent invasion of another's interests; intentional invasion of another's interests; or other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interests. *See Bible Baptist Church v. City of Cleburne*, 848 S.W.2d 826, 829 (Tex. App.—Waco 1993, writ denied) (setting up categories for actionable nuisance); *see also Gotcher v. City of Farmersville*, 137 Tex. 12, 151 S.W.2d 565, 566 (1941) (dicta stating that a municipality is liable for the maintenance of a nuisance in the course of the performance of a governmental function if the nuisance is an unlawful invasion of another's interests);

*City of Texarkana,* 490 S.W.2d at 194 (holding municipality not liable for nuisance caused by the negligent performance of a governmental function); Prosser, *Nuisance Without Fault,* 20 TEX. L.REV. 399, 416–17 (1942). As Dean Prosser explained:

> Nuisance, whether it be public or private, is thus a field of tort liability, a kind of damage done, rather than any particular type of conduct. As in the case of any other kind of damage, it may be inflicted by conduct which is intended to cause harm, by that which is merely negligent, or by that which involves an unusual hazard or risk, in line with the principle of *Rylands v. Fletcher.*

*Id.* at 416.

■ The City established as a matter of law that it is not liable for nuisance. To the extent that Likes's nuisance claim is based on the City's negligent performance of its governmental functions, the City is immune from liability for property damages. *See* TEX. CIV. PRAC. & REM.CODE § 101.021(2); *see also Bible Baptist Church,* 848 S.W.2d at 829; *Callaway,* 602 S.W.2d at 333; *City of Texarkana,* 490 S.W.2d at 194. Mere nuisance has never been a basis for recovery of mental anguish in Texas, as our analysis in Part II would suggest. There is considerable authority, however, for the proposition that a nuisance which impairs the comfortable enjoyment of real property may give rise to damages for "annoyance and discomfiture." *Daniel v. Fort Worth & R.G. Ry.,* 96 Tex. 327, 72 S.W. 578, 579 (1903); *accord Baltimore & P.R. Co. v. Fifth Baptist Church,* 108 U.S. 317, 335, 2 S.Ct. 719, 731, 27 L.Ed. 739 (1883); *Vestal v. Gulf Oil Corp.,* 149 Tex. 487, 235 S.W.2d 440, 441–42 (1951); *Lacy Feed Co. v. Parrish,* 517 S.W.2d 845, 851 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.); RESTATEMENT (SECOND) OF TORTS § 929(1)(c) (1979); MCCORMICK, HANDBOOK OF THE LAW OF DAMAGES 503 (1935); Bateman, Annotation, *Nuisance as Entitling Owner or Occupant of Real Estate to Recover Damages for Personal Inconvenience, Discomfort, Annoyance, Anguish, or Sickness, Distinct from, or in Addition to, Damages for Depreciation in Value of Property or Its Use,* 25 A.L.R.5th 568 (1994); Allen, Annotation, *Nuisance as Entitling Owner or Occupant of Real Estate to Recover Damages for Personal Inconvenience, Discomfort, Annoyance, Anguish, or Sickness, Distinct from, or in Addition to, Damages for Depreciation in Value of Property or Its Use,* 142 A.L.R. 1307 (1943). Likes has not sought such damages and has failed to preserve any error on the issue. We therefore do not reach the question of whether any such damages are property damages or personal injuries within the meaning of section 101.021. *Compare Callaway,* 602 S.W.2d at 334, *Jarrett v. E.L. Harper & Son, Inc.,* 160 W.Va. 399, 235 S.E.2d 362, 365 (1977), *and* RESTATEMENT (SECOND) OF TORTS § 821D cmt. b (1979) (analyzing annoyance as a form of property damages), *with Vestal,* 235 S.W.2d at 442, *Lacy Feed,* 517 S.W.2d at 851, *and* Allen, 142 A.L.R. at 1329 (describing annoyance as a personal injury).

■ Nor may Likes recover property damages on a theory of non-negligent nuisance. The City produced summary judgment evidence that it did not intentionally do anything to increase the amount of water in the watershed in which Likes's home was located. The culvert system was substantially completed before 1940, more than ten years before Likes's home was built, and the City has made no improvements since then to increase the amount of water in the watershed. Moreover, the culvert system is not abnormal or out or place in its surroundings within the watershed district.

## VI

Finally, Likes claims in the alternative that the City's operation of its culvert system is a taking or damaging of her property that violates article I, section 17 of the Texas Constitution which states: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person...." The court of appeals did not address this claim, leaving it to the trial court to decide on all of Likes's causes of action on remand.

■ A person's property may be "taken, damaged or destroyed" and therefore

require compensation if an injury results from either the construction of public works or their subsequent maintenance and operation. *See Hidalgo County Water Improvement Dist. No. 2 v. Holderbaum,* 11 S.W.2d 506, 507 (Tex. Comm'n App.1928, judgm't adopted). However, mere negligence which eventually contributes to the destruction of property is not a taking. *Cf. Steele v. City of Houston,* 603 S.W.2d 786, 790–92 (Tex.1980); *Texas Highway Dep't v. Weber,* 147 Tex. 628, 219 S.W.2d 70 (1949); *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 736–37 (1941). The City presented clear, direct, and positive evidence that it committed no intentional acts that created a taking in this case. Likes did not offer any controverting evidence, and the City was entitled to summary judgment on this cause of action.

\* \* \*

For the foregoing reasons, we affirm the judgment of the court of appeals in part and reverse it in part, remanding this cause to the trial court for further proceedings on the sole issue of whether the City negligently constructed the culvert system before 1970.

SPECTOR, J., dissenting.

SPECTOR, Justice, dissenting.

Today the majority holds that the City of Tyler is entitled to sovereign immunity from Adeline Likes's claims based on the negligent maintenance and operation of the City's storm sewers before 1986. Because this application of the Tort Claims Act violates the Texas Constitution's prohibition on retroactive laws, I dissent.

I.

As the majority recognizes, the operation of a municipality's storm sewers was a proprietary function for which a municipality could not claim a defense of sovereign immunity at common law.

962 S.W.2d at 500; *see Dilley v. City of Houston,* 148 Tex. 191, 222 S.W.2d 992, 995 (1949); *see also City of Tyler v. Fowler Furniture,* 831 S.W.2d 399, 402 (Tex.App.—Tyler 1992, writ denied). In 1987, however, the Legislature exercised its express constitu-

tional authority to reclassify a municipality's operation of storm sewers as a governmental function, effectively requiring a party damaged by a city's storm sewer operations to state a claim within the Tort Claims Act's waiver of immunity to obtain any recovery. *See* Act of June 16, 1987, 70th Leg., 1st C.S., ch. 2, § 3.02, 1987 Tex. Gen. Laws 37, 48 (codified at TEX. CIV. PRAC. & REM.CODE § 101.0215(a)(9)); TEX. CONST. art. XI, § 13. The 1987 legislation applies to suits filed after its effective date of September 2, 1987. Act of June 16, 1987, § 4.05(a), 1987 Tex. Gen. Laws at 51.

The flood that gave rise to Adeline Likes's suit occurred on April 5, 1986, over a year before the Legislature passed the reclassifying legislation. Likes filed this suit on March 31, 1988, within the limitations period for her claims but six months after the reclassifying legislation took effect. She argues that as applied to her suit, the Legislature's reclassification of the City's storm sewer operations as a governmental function within the scope of the City's sovereign immunity violates article I, section 16 of the Texas Constitution. I agree.

II.

Article I, section 16 of our Constitution provides, "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." A law is unconstitutionally retroactive if it takes away or impairs rights that have already accrued under existing laws. *See Railroad Comm'n v. Pend Oreille Oil & Gas Co.,* 817 S.W.2d 36, 47 (Tex.1991); *McCain v. Yost,* 155 Tex. 174, 284 S.W.2d 898, 900 (1955). A cause of action generally accrues at the time when facts come into existence that authorize a claimant to seek a judicial remedy. *Celtic Life Ins. Co. v. Coats,* 885 S.W.2d 96, 100 (Tex.1994).

Likes's cause of action vested on April 5, 1986, the date of Likes's injuries, when any right of action based on negligence accrued. *See Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 262 (Tex.1994). Under the law in effect on that date, Likes could recover legally cognizable damages resulting from the City's negligence in constructing or

maintaining its storm sewers. By expanding the City's sovereign immunity, however, the 1987 amendment barred all recovery for the property damages Likes allegedly sustained because of the City's negligence. The amendment did not simply affect Likes's remedy—it deprived her of her entire cause of action.

This Court has traditionally interpreted section 16 to forbid modification of the substantive rights of litigants whose claims or defenses have already accrued at the time a law is enacted, treating those claims or defenses as "vested" for purposes of article I, section 16. *See Cathey v. Weaver,* 111 Tex. 515, 242 S.W. 447, 453 (1922) (holding that when the statute of limitations runs on a claim, the limitations defense vests and the Legislature may not retroactively lengthen the limitations period for those claims); *Middleton v. Texas Power & Light Co.,* 108 Tex. 96, 185 S.W. 556, 560 (1916) (holding that the worker's compensation system could replace common-law rules to the extent that it did not interfere with vested property rights in accrued causes of action); *Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249, 253 (1887) ("When ... such a state of facts exists as the law declares shall entitle a plaintiff to relief in a court of justice ... then it must be said that a right exists, has become fixed or vested, and is beyond the reach of retroactive legislation.").

Today, however, the Court holds that the 1987 amendment did not violate article I, section 16 because Likes had no vested right and had a reasonable time in which to assert her rights before the amendment took effect. The majority opinion disregards this Court's previous understanding of vested rights, and relies on cases holding that the Legislature can alter *non-vested* substantive rights or shorten the limitations period for an accrued cause of action without violating article I, section 16, if it gives the claimant a reasonable time to assert rights under the former law or if the amendment does not bar all remedy. 962 S.W.2d at 502 (citing *Texas Water Rights Comm'n v. Wright,* 464 S.W.2d 642, 649 (Tex.1971); *Mellinger,* 3 S.W. at 254–55). The majority notes that Likes had "more than two months" after the Legisla-

ture passed the amendment in which to file suit under the old law, and that the new law took effect seventeen months after Likes's claim accrued. 962 S.W.2d at 503.

The 1987 amendment did not alter the statute of limitations for common law negligence claims or for the particular claims Likes asserts, but actually deprived Likes of a *vested* right in her cause of action. The precedent cited by the majority is thus inapposite. Even if that precedent did apply to the facts here, Likes reasonably relied on the two-year limitations period for her claims. *See* TEX. CIV. PRAC. & REM.CODE § 16.003. The two-and-a-half-month period after the governor signed the new law is not a reasonable time in which to expect Likes (who still had nine months to file her claim within the limitations period) to become aware of the amendment to the Tort Claims Act (which was previously irrelevant to her claims), realize that it could preclude her recovery from the City, and file her suit. A two-and-a-half-month period is the blink of an eye in relation to the nine-year life of this lawsuit and far shorter than the periods this Court has previously found reasonable for purposes of article I, section 16. *See Wright,* 464 S.W.2d at 649 (nine-and-a-half years); *Boon v. Chamberlain,* 82 Tex. 480, 18 S.W. 655, 656 (1891) (seven years). The 1987 amendment violated article I, section 16 as applied to Likes's cause of action.

The City argues that article XI, section 13 of the Texas Constitution exempts the reclassifying legislation from the constitutional prohibition on retroactive laws. Article XI, section 13, added in 1987, expressly authorizes the Legislature to modify the common-law rules governing the scope of sovereign immunity:

Sec. 13. (a) Notwithstanding any other provision of this constitution, the legislature may by law define for all purposes those functions that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law.

(b) This section applies to laws enacted by the 70th Legislature, Regular Session,

1987, and to all subsequent regular or special sessions of the legislature.

TEX. CONST. art. XI, § 13. According to the City, the first clause in section 13(a), which protects the newly created legislative power from constitutional provisions that would otherwise stop the Legislature from altering the common-law boundaries of sovereign immunity, also goes so far as to place that power beyond the reach of general constitutional regulations on the process of lawmaking, such as the prohibition on retroactive laws.

The presumption against retroactivity is a strong and enduring principle in our legal tradition. *See, e.g., Landgraf v. USI Film Prods.*, 511 U.S. 244, 270, 114 S.Ct. at 1499–1500, 128 L.Ed.2d 229 (1993); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471–72, 102 L.Ed.2d 493 (1988); *Cox v. Robison*, 105 Tex. 426, 150 S.W. 1149, 1156 (1912); *Grigsby v. Peak*, 57 Tex. 142, 144 (1882). This Court has always construed legislation and the Texas Constitution to operate prospectively absent a clear indication of legislative intent to the contrary, even when the Constitution would not otherwise prohibit a law from having retroactive effects. *See Coastal Indus. Water Auth. v. Trinity Portland Cement Div.*, 563 S.W.2d 916, 918 (Tex.1978); *Government Personnel Mut. Life Ins. Co. v. Wear*, 151 Tex. 454, 251 S.W.2d 525, 529 (1952); *State v. Humble Oil & Ref. Co.*, 141 Tex. 40, 169 S.W.2d 707, 708 (1943); *Cox*, 150 S.W. at 1156; *Grigsby*, 57 Tex. at 144; *Piedmont & Arlington Life Ins. Co. v. Ray*, 50 Tex. 511, 519 (1878). The Legislature, too, has adopted the presumption against retroactivity in the Code Construction Act. TEX. GOV'T CODE § 311.022.

Article XI, section 13 does not expressly authorize the Legislature to change the substantive law in previously vested causes of action. The legislative history of section 13 indicates that this provision originated as a means to validate the reclassifying legislation in the face of a potential "open courts" challenge. *See, e.g.,* HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. S.J. Res. 26, 70th Leg., 1st C.S. (1987). Senator John Montford, the author of section 13, explained that unlike an earlier version which expressly applied to accrued causes of ac-

tion, the provision ultimately added to our Constitution does not reach the issue of retroactivity. Debate on Tex. S.J. Res. 26 on the Floor of the Senate, 70th Leg., 1st C.S. (May 6, 1987) (tape available from Senate Staff Services Office). In short, there is no indication that Texans intended article XI, section 13 to authorize the Legislature to eliminate previously vested rights in the course of reclassifying certain municipal functions as governmental functions. I would therefore conclude that Likes is entitled to sue under the law in effect when her claims accrued.

### III.

I do not believe that the Legislature could constitutionally amend the law of sovereign immunity to protect the City from liability for the event that gave rise to Likes's suit. Instead of applying the Legislature's after-the-fact extension of sovereign immunity to preclude Likes's cause of action, I would allow her suit to proceed under the law in effect when her claims accrued. I dissent.