

# NUMBER 13-10-00498-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

SERVICE CORPORATION INTERNATIONAL AND
SCI TEXAS FUNERAL SERVICES, INC.,                   Appellants,

v.

LETICIA LEAL, ET AL.,                                     Appellees.

---

On appeal from the 370th District Court
of Hidalgo County, Texas.

---

# DISSENTING MEMORANDUM OPINION

**Before Justices Benavides, Vela, and Perkes**
**Dissenting Memorandum Opinion by Justice Benavides**

*Eternal rest, grant unto them, O Lord*
*And let perpetual light shine upon them.*
*May they rest in peace.   Amen.*

The highly unusual facts of this case, coupled with the jury's affirmative finding of fraud by SCI International and SCI Texas, allows me to conclude that Rodolfo Garza and Charles Rogers, tragically, did not rest in peace after their respective interments.   As a result, I would hold that the Garza and Rogers families are entitled to recover mental anguish damages.

## I.      LIMITATIONS AND FRAUD CLAIMS

### A.     Limitations

First, I concur with the majority's limitation analysis and disposition with regard to the claims asserted by Leticia Leal, Frank Garza, Beatriz Cavazos, Maria Elena Cisneros, and Noe Cavazos.   The evidence shows that at or around May 2003, Leticia Leal learned from her uncle Noe about the moving of her father's gravestone.   At that time, this information was also relayed to Frank, Beatriz, and Maria Elena.   I agree with the majority that the jury was within its province to find that Frank, Beatriz, Maria Elena, and Noe did not assert their claims within the four-year statute of limitations for fraud in May 2008, and were thereby barred by the statute of limitations.   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (West 2002).   Therefore, Leticia is the only member of the Garza family who asserted her claim within the limitations period in 2004.

With regard to the Rogers family, the majority asserts that the trial court erred by disregarding the jury's findings on the limitations issue because it was within the province of the jury to have determined that the parties could have discovered their claims by at least May 2003 because when the Rogers purchased the plots in 1982, the presence of

2

Garza's headstone would have provided them notice of the over-sale by SCI Texas. After reviewing the evidence, I disagree.

Evelyn Rogers testified that she was not made aware of the situation involving the concealment of the Garza grave until May 2008, when the other family members joined Leticia's lawsuit against SCI International and SCI Texas. According to Evelyn, she first learned of the allegations against SCI by her employer, attorney Tony James in 2008. James explained the allegations to Evelyn and recommended that she speak with the Garza family's attorney. Additionally, Evelyn testified that in 1988, her parents showed her and her brother Gerald the four plots originally purchased in 1982 for the family's benefit. On the witness stand, Evelyn described the scene as she remembered it in 1988:

> [. . .] I just saw an expanse of grass. But if there had been anything—believe me, my parents were [sic] attention to detail. They knew exactly where those plots were. They would have said something. So, no, I don't think that there was anybody there at the time.

This testimony runs counter to the jury's finding that the Rogers family did not file suit within four years of the date that they, exercising reasonable diligence, should have discovered the fraud.[1] Therefore, because I would conclude that the jury's finding has no support in the evidence, I would uphold the trial court's disregard for the jury's findings with respect to Catherine, Evelyn, and Gerald Rogers's limitations bar. *See* TEX. R. CIV. P. 301; *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994).

---

[1] I recognize that SCI International and SCI Texas contend that an individual by the name of "Ray Rosas" notified the Rogers family of the burial mix-up. However, Evelyn testified that at the time of her father's burial in 2002, no one from SCI International or SCI Texas notified her or her mother of the burial issue. Evelyn testified that prior to this lawsuit, she had never heard of anyone by the name of "Ray Rosas" and that she was the first to notify her mother, Catherine, of the situation after learning about the situation in 2008.

**B.     Fraud**

Next, I would uphold the jury's finding that SCI International and SCI Texas committed fraud against Leticia Leal and the Rogers Family.

**1.  Leticia Leal**

Sufficient evidence supports the jury's finding of fraud by SCI International and SCI Texas against Leticia.   Corporate representatives from both defendants testified that an effort was made to conceal the burial mix-up and headstone hiding from the Garza family.   Susano Garza, a one-time employee of SCI International, entered into the following colloquy with the Garza family's attorney during a videotape deposition:

| **COUNSEL:** | And would you agree that you never informed Rodolfo Garza's family that the cemetery had removed Mr. Garza's headstone or that his lot that he was buried in was actually sold to somebody else? |
|---|---|
| **SUSANO GARZA:** | No, I did not. |

Additionally, SCI[2] corporate representative, Eduvijes Treviño, testified to the following during a videotaped deposition offered by plaintiffs' counsel and admitted into evidence at trial:

| **COUNSEL:** | Do you admit as SCI's corporate representative that SCI in fact actively concealed from the Rogers family that someone was buried in one of their spaces by removing Rodolfo Garza's headstone and hiding it behind a shed? |
|---|---|
| **TREVIÑO:** | Yes, sir. |
| **COUNSEL:** | Do you admit as SCI's corporate representative that SCI never told the relatives of Rodolfo Garza that Mr. Garza was buried in a space that belonged to another family? |

_____

[2] The record is unclear whether Treviño served as a corporate representative for SCI International or SCI Texas.

4

**TREVIÑO:** Yes, sir.

The decision to disinter Rodolfo's body and relocate his grave to a veteran's cemetery was done at the behest of Rodolfo's family after details of the controversy surrounding his grave came to light and the Garza family lost trust in SCI International and SCI Texas.

The jury was within its province to infer—supported by the evidence—that SCI International and SCI Texas failed to disclose, and purposefully concealed, the headstone removal and burial mix-up from the Garza family so that they would refrain from disinterring Rodolfo's body sooner. *See City of Keller v. Wilson*, 168 S.W.3d 802, 821 (Tex. 2005). As a result, the Garza family left Rodolfo's body in place. Here, I would hold that some evidence exists to uphold the jury's finding of fraud by SCI International and SCI Texas against Leticia.

### 2. The Rogers Family

I also believe that sufficient evidence supports a finding of fraud by SCI International and SCI Texas against the Rogers family.

Susano Garza confirmed that his manager instructed him to not discuss any problems with the overselling of plots belonging to the Rogers family at the time of Charles Rogers's death. Treviño also testified about SCI International and SCI Texas's active concealment of details regarding the oversold burial plots to the Rogers when asked by plaintiffs' counsel by videotaped deposition:

> **COUNSEL:** Do you admit as SCI's corporate representative that SCI never told the Rogers family that someone was buried in one of their spaces?
>
> **TREVIÑO:** Not to—not to my knowledge.

5

**COUNSEL:** Not to your knowledge were they ever told?

**TREVIÑO:** Right.

**COUNSEL:** Do you admit as SCI's corporate representative that SCI in fact actively concealed from the Rogers family that someone was buried in one of their spaces by removing Rodolfo Garza's headstone and hiding it behind a shed?

**TREVIÑO:** Yes, sir.

SCI employee John Davis Hudson also testified to the following concealment toward the Rogers family by videotaped deposition, conducted by plaintiffs' counsel:

**COUNSEL:** Okay. And then here comes the Rogers family that's shown and known by you to own 5, and they come to bury their father in space 8. And before that burial, these questions of who's in 4 or 5 were known by your company, but you did not inform the Rogers that a space that they owned and previously bought as far back as 1982, that your company had knowledge it had a body there, right?

**HUDSON:** Right.

**COUNSEL:** You didn't tell them, right?

**HUDSON:** No, I didn't.

**COUNSEL:** You did not, as the general manager of the Highland Memorial Park, call up the Rogers family and before they buried their father and offered them four other lots to avoid this situation that we now find ourselves in, right?

**HUDSON:** I did not.

During further examination, Hudson admitted that he knew of the problems surrounding the graves since June 2002, but he never notified the families involved.

During her testimony, Evelyn testified that had SCI International and SCI Texas

6

notified her or her family about the issues surrounding her family's burial plots, they would have moved to another location to find four connected plots elsewhere in the cemetery because the Rogers family would never have requested for Rodolfo's body to be disturbed through disinterment. Gerald testified that his mother, Catherine, considered having herself cremated and buried on top of Charles's grave to remove any reason to disinter Rodolfo's body. Based on this record, I would affirm the jury's finding of fraud committed by SCI International and SCI Texas against Catherine, Evelyn, and Gerald.

## II. MENTAL ANGUISH DAMAGES

The Texas Supreme Court's *Parkway* standard for recovery of mental anguish damages requires a plaintiff to introduce "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine." *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 860 (Tex. 1999) (citing *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (1995)). The Texas Supreme Court has acknowledged *Parkway's* flaws because it may "merely encourage exaggeration and penalize those who deal constructively with life's vicissitudes," but nonetheless, the high court continues to uphold and utilize the *Parkway* standard "because the law has not yet discovered a satisfactory empirical test for what is by definition a subjective injury." *City of Tyler v. Likes*, 962 S.W.2d 489, 495 (Tex. 1997). The supreme court indicated that recovery for mental anguish is permitted "in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result." *Id.* at 496.

In this case, I would conclude that the fraudulently concealed disruption of a

7

spouse or parent's resting place is the type of situation which involves events of "such a shocking and disturbing nature that mental anguish is a highly foreseeable result." *Id.* Common sense and societal values support the proposition that surviving family members must trust that a family member will rest in peace following his or her interment. Here, a cloud was hung over Rodolfo and Charles's grave sites due to SCI International and SCI Texas's intentional actions. The mental anguish that flows from these actions, as described by Leticia, Evelyn, and Gerald, are natural and highly foreseeable, not only because the jury found them to be as such, but also through SCI's own admissions.

Ray McManness, vice president of SCI, testified: (1) that he was not proud of the work done in this case; (2) that he knows the impact that it has on families; and (3) that such actions can devastate families such as the Garza and Roger families. Additionally, corporate representative Treviño also admitted in testimony that secretly moving bodies, making double sales of burial plots without disclosing them to the families involved, and moving headstones without telling the surviving family members would cause them "severe emotional distress." This testimony allows me to conclude and further demonstrates that SCI International and SCI Texas knew that the actions and controversies which took place with regard to Rodolfo and Charles's graves would cause mental anguish for their respective family members.

The courts of appeals are authorized to determine whether damage awards are supported by insufficient evidence—that is, whether they are excessive or unreasonable. *Bentley v. Bunton*, 94 S.W.3d 561, 606 (Tex. 2002). "Not only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount awarded." *Id.* Jurors must "find an amount that, in the standard

8

language of the jury charge, 'would fairly and reasonably compensate' for the loss." *Id.* Compensation for mental anguish can only exist if plaintiffs show a substantial disruption of their daily routines, or any evidence of "a high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation, embarrassment, or anger." *See Parkway*, 901 S.W.2d at 444; *Bentley*, 94 S.W.3d at 606.

Based on this record, I believe that the *Parkway* standard is met because (1) the facts surrounding this case are of such a shocking and disturbing nature to cause a high degree of mental pain and distress toward Leticia and the Rogers family; and (2) SCI representatives admitted that these actions would cause a surviving family member severe emotional distress. Furthermore, the record sufficiently supports that the jury's award of $10,000 to each family member for mental anguish is fair and reasonable, in light of the highly unusual facts of this case, and should be affirmed. *See Bentley*, 94 S.W.3d at 606; *Parkway*, 901 S.W.2d at 444.

### III. CONCLUSION

Accordingly, I concur, in part, and respectfully dissent, in part.


GINA M. BENAVIDES,
Justice


Delivered and filed the
11th day of October, 2012.

9