**Affirmed as Modified and Majority and Dissenting Opinions filed October 1, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00404-CV

---

**DAVID CANALES, JR., INDIVIDUALLY, AND AS NEXT FRIEND OF DAVID ADRIAN CANALES, AND ANGIE MARIE CANALES, Appellants / Cross-Appellees**

**V.**

**EDWARD CURTIS VANDENBERG, Appellee / Cross-Appellant**

---

**On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 71132**

---

## MAJORITY OPINION

Edward Vandenberg[1] and Angie and David Canales are neighbors in the City of of Brookside Village. Angie and David, individually and as next friend of their minor son Adrian, sued Vandenberg for assault and intentional infliction of

---

[1] Vandenberg's name is sometimes spelled "Vanden Berg" in the record and briefs. We use the spelling that is in the trial court's judgment.

emotional distress after Vandenberg entered the Canaleses' property and got into a fistfight with David. Vandenberg asserted counterclaims for assault, slander, nuisance, and an injunction to stop the Canaleses' playing of loud music. A jury found against the Canaleses on their claims and for Vandenberg on the issue of nuisance and awarded mental anguish damages to Vandenberg against David and Angie. The trial court signed a judgment awarding the damages and permanently enjoined the Canaleses from playing loud music.

All parties appealed. The Canaleses contend, among other things, that no evidence supports the jury's nuisance finding; Vandenberg's liability questions cannot legally support a judgment for mental anguish damages; and the trial court erred by awarding a permanent injunction. Vandenberg contends that the trial court erred by not submitting his slander claims to the jury.

We agree with the Canaleses that Vandenberg's liability questions cannot support a judgment for mental anguish damages, and the trial court erred by enjoining Adrian, against whom there was no liability finding. Thus, we modify the trial court's judgment by deleting the award of mental anguish damages and accompanying interest against David and Angie and the injunction against Adrian. We overrule the remainder of the parties' issues and affirm the judgment as modified.

## I. LIABILITY FOR NUISANCE

In their second issue,[2] the Canaleses contend that there is no evidence to support the jury's findings that David and Angie created a private nuisance. We hold that the evidence is legally sufficient.

---

[2] In light of our resolution of other issues providing the same relief to the Canaleses in this appeal, we do not address the Canaleses' first issue regarding the sufficiency of the evidence to support the jury's award of mental anguish damages or their third issue regarding the

2

## A.    Standard of Review and Legal Principles

The test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *W & T Offshore, Inc. v. Fredieu*, 610 S.W.3d 884, 898 (Tex. 2020). If more than a scintilla of competent evidence supports the judgment, the jury's verdict must be upheld. *Id.*

In the absence of an objection, as here, we review the sufficiency of the evidence based on the jury charge. *See Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 407 (Tex. 2016).[3] Question No. 14, to which the jury answered affirmatively, asked, "Did David and Angie Canales negligently create a private nuisance?" Consistent with precedent regarding nuisance, the charge informed the jury that the Canaleses create a private nuisance "if their conduct substantially interferes with Ed Vandenberg's use and enjoyment of his property interest." *See Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 593 (Tex. 2016). The charge explained that "substantial interference" means that the Canaleses' "conduct must cause unreasonable discomfort or annoyance to a person of ordinary sensibilities attempting to use and enjoy the person's land. It is more than a slight inconvenience or petty annoyance." *See id.* at 593, 595–96.

## B.    Evidence

Vandenberg and his wife, Phyllis Waltz, live on a 5.8-acre lot in the City of Brookside Village. The city is a "pretty small town" with about 1,700 residents and 470 homes. It is a residential area, but there are some businesses.

---

sufficiency of the evidence to support the jury's finding of intentional nuisance. *See* Tex. R. App. P. 47.1.

[3] The Canaleses objected to the submission of a nuisance question based on a lack of evidence, but they agree that the instructions in this case substantially track the standards for nuisance from *Crosstex North Texas Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580 (Tex. 2016).

3

Vandenberg and Waltz live about 300 yards down the road from the Canaleses, who have a 3200-square-foot "party barn" on their property in addition to their residence. Another neighbor, Gerry Mills, also lives with his wife about 300 yards from the Canaleses.

Vandenberg, Waltz, and Mills testified similarly that the Canaleses have held parties in their barn late at night into the early morning hours. David Canales agreed sometimes the parties would start to wind down after 1:00 a.m.; sometimes they would go on until 3:00 a.m. Mills testified that the Canaleses would hold parties about ten times per year for six or seven years until a temporary injunction was entered in 2014. He testified that the music usually continued after midnight, sometimes until 2:00 a.m. The events would usually occur for holidays, birthdays, and the like. David testified that they would often have fifty to sixty guests, or up to eighty guests. Vandenberg estimated at least one party had more than a hundred guests. A friend of the Canaleses' testified that they would use police officers to control parking and direct traffic during the parties.

Waltz testified that the music and bass from the Canaleses' parties would vibrate their house. She could go to the far end of her house with noise canceling earphones, and wrap a blanket over her head, and she would still hear the noise and feel the bass. Vandenberg testified that he knew a party was over when the house "quit shaking." Mills testified that they could physically feel the low frequency bass. His house would vibrate, and the windows would rattle and shake. Mills testified that it was impossible to sleep when the music was playing. Vandenberg testified similarly that when he saw cars piling up on the Canaleses' property, he knew there would be no sleep that night.

The first time Mills experienced the music and bass, he asked David to turn it down. David said he would, but it didn't happen. On one occasion, David told

4

Mills, "[I]t doesn't matter if I'm fined or ticketed. That's the price of giving a party."

Mills started making complaints to the Brookside Police Department in 2008. Vandenberg and Waltz also complained to the police and documented eighteen instances between 2010 and 2014. Mills didn't track all of his complaints, but many times he would report the disturbances to the police or Brazoria County Sheriff's Office, and nothing would be done about it. Mills would ask "if they could have them just turn the bass down and—and many occasions it was turned up."

Vandenberg introduced evidence of more than ten police reports relating to these incidents. Mills testified that a report was not made every time he complained. In several of the reports, the officers indicated that they were inside the Millses' home and could hear the music or feel the vibration of the bass. On multiple occasions, officers asked one of the Canaleses to turn the music down or off, and the Canaleses complied. Also on multiple occasions, the officers issued Angie municipal court citations or warnings for "disorderly conduct – unreasonable noise."

## C. Analysis

"Noise, if sufficiently extreme, may constitute a nuisance." *Pool v. River Bend Ranch, LLC*, 346 S.W.3d 853, 857 (Tex. App.—Tyler 2011, pet. denied); *see also Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269 (Tex. 2004) ("There is no question that foul odors, dust, noise, and bright lights—if sufficiently extreme—may constitute a nuisance.").

Recently the Supreme Court of Texas provided an example of a nuisance that could justify a permanent injunction:

5

For example, if a landowner advertises that it will host fantastically loud all-night parties on its property twelve times during a year, with each party to be announced twenty-four hours in advance, a trial court could enjoin future parties at the neighbors' behest if a jury finds the first few parties caused noise nuisances even though the parties are sporadic and it is not yet known when the next one will occur.

*Huynh v. Blanchard*, 694 S.W.3d 648, 677 n.32 (Tex. 2024).

Here, the jury heard that the Canaleses held late-night parties about ten times per year and played music so loud it could be heard inside homes more than 300 yards away, and the bass would vibrate the homes and windows. Residents of those homes could not sleep or otherwise avoid the vibrations and noise even by taking extreme measures.

Reasonable and fair-minded jurors could have found that the Canaleses' conduct—repeatedly hosting late-night parties with loud music and strong bass— caused an unreasonable discomfort or annoyance to a person of ordinary sensibilities attempting to use and enjoy the person's land. *See Pool*, 346 S.W.3d at 857–59 (upholding nuisance finding based on noise from a neighboring landowner's hosting of events for motorcycles and all-terrain vehicles); *see also Huynh*, 694 S.W.3d at 677 n.32 (providing as example of nuisance "fantastically loud all-night parties").

The Canaleses' second issue is overruled.

## II.    MENTAL ANGUISH DAMAGES

In their fourth and fifth issues, the Canaleses contend that neither of Vandenberg's jury questions on the issue of nuisance can support the award of mental anguish damages. We agree with the Canaleses.

## A. Negligent Nuisance

In their fifth issue, the Canaleses contend that the jury's finding of a negligent nuisance cannot support an award of mental anguish damages.

As mentioned above, the jury answered affirmatively Question No. 14, which asked, "Did David and Angie Canales negligently create a private nuisance?" The jury found in another question that the nuisance was a "temporary" rather than "permanent" nuisance.

"Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish." *City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex. 1997). "Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, [courts] permit recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result." *Id.* at 496.

"It has long been the rule in Texas that if a nuisance is temporary, the landowner may recover only lost use and enjoyment (measured in terms of rental value) that has already accrued." *Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 276 (Tex. 2004); *see also Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 609–12 & n.21 (Tex. 2016) (discussing the types of damages available for nuisance as loss of rental or use value, cost of restoring land, or lost market value, but noting authority for "annoyance and discomfiture" damages). Although a nuisance finding may authorize the award of damages for "annoyance and discomfiture," a "[m]ere nuisance has never been a basis for recovery of mental anguish in Texas." *Likes*, 962 S.W.2d at 504; *see also* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: General Negligence*

7

PJC 12.6 cmt. (2022) ("If the nuisance claim is based on negligence, mental anguish damages are not recoverable.").

Vandenberg acknowledges that the Canaleses "may be correct in that plaintiffs, in general, may not recover mental anguish damages caused by negligent conduct" resulting in a nuisance. Citing no analogous authority, Vandenberg suggests that this case involves particularly disturbing events such that "mental anguish ought to be presumed." In *Likes*, the supreme court identified cases involving "injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result" as those involving wrongful death or actions by bystanders for a close family member's serious injury. *Likes*, 962 S.W.2d at 496. The injury in *Likes* was the flooding of the plaintiff's home, which the court declined to recognize as one giving rise to mental anguish damages based on a shocking and disturbing injury. *See id.* at 493, 496. We decline to extend the "shocking and disturbing" exception to a negligent nuisance involving loud music.

The Canaleses' fifth issue is sustained.

## B.    Intentional Nuisance

In their fourth issue, the Canaleses contend that the jury's finding of an intentional nuisance cannot support the judgment for mental anguish damages against both David and Angie, jointly and severally, because the question asked if either of them was liable—not both of them.[4]

The jury answered affirmatively Question No. 13, which asked, "Did David *or* Angie Canales intentionally create a private nuisance?" (emphasis added).

---

[4] The Canaleses' brief appears to assume that mental anguish damages are recoverable for an intentional nuisance—a question we need not address.

Vandenberg, as the party seeking a liability finding against multiple defendants, was required to submit jury questions on liability for each individual defendant. *See W & F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 45 (Tex. App.—Houston [14th Dist.] 2006, no pet.). When a question asks in the disjunctive, as here, whether one defendant or another should be liable, the trial court has no basis upon which to render a judgment against both or either of them. *See J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 640 (Tex. App.—San Antonio 1993, no writ); *see also Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 61 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (holding that the jury's answer to a question seeking to impose liability in favor of two plaintiffs, which asked about one "and/or" the other, was ambiguous and could not support a judgment). Here, the jury's "yes" answer to Question No. 13 "could have meant that [David] was negligent but [Angie] was not, or [Angie] was negligent but [David] was not, but not that both were negligent." *See J & C Drilling*, 866 S.W.2d at 640.

This court must try to interpret a jury finding in a manner that supports the judgment, and we may review the remainder of the jury charge and the record to do so. *See Tanglewood*, 436 S.W.3d at 61–62. Review of the remainder of the jury charge and the explanatory paragraphs and definitions in Question No. 13 is of no help. Although parts of the charge refer to "David and Angie Canales," Question No. 13 asks whether "David or Angie Canales" created a private nuisance. In several instances, the instructions refer to "the Canales" with an apostrophe added to the end of "Canales" instead of an *es* and an apostrophe to indicate the plural possessive, which itself does not help resolve the ambiguity. *See* The Chicago Manual of Style 7.6, 7.9, 7.18 (15th ed. 2003) (plural possessive formed by adding *es* and apostrophe, with examples Martinezes' and Williamses').

Immediately following the "or" question, the charge states that "intentionally" means "the Canales' acted with respect to the nature of **his** conduct or to a result of **his** conduct when it was the conscious objective or desire to engage in the conduct or result." (emphasis added). We do not believe that review of the charge resolves the ambiguity in Question No. 13 such that we may substitute the word "and" for the word "or" and assume that the jury found both David **and** Angie liable.

Vandenberg urges this court to review the record, contending that evidence was presented to support a finding against both David and Angie. Although the record reveals that both David and Angie were aware of complaints of loud music on different occasions, evidence regarding their intent was materially different. For example, only Angie received municipal court citations or warnings regarding loud music. There was evidence that only David referred to potential fines as "the price of giving a party," and David testified about hiring police officers to make sure they weren't "breaking the law as far as the noise."

"This is not a case in which undisputed facts in the record allow us to ascertain the intent of the jury's liability findings 'with definiteness and certainty.'" *Tanglewood*, 436 S.W.3d at 62 (quoting *Rountree Motor Co. v. Smith Motor Co.*, 109 S.W.2d 296, 300 (Tex. App.—Beaumont 1937, writ dism'd)). This court "cannot use the record to supply a finding of liability in the face of ambiguity." *Id.* Even if the evidence "could support a finding" against both David and Angie, "the verdict does not clearly show that is what the jury intended to find." *Id.* (quotation omitted). This court is not "permitted to speculate as to what the jury intended by an ambiguous answer which, because of its ambiguity, cannot constitute a proper basis for a judgment." *Id.* (quotation omitted).

Finally, Vandenberg contends that the Canaleses waived their argument by not objecting before submission of the case to the jury. But Vandenberg's

contention is based on a conclusion that the question was not ambiguous. The Canaleses preserved their complaint about the judgment by raising it in a post-verdict motion. *See id.* at 64.

The Canaleses' fourth issue is sustained.

## C. Conclusion

Having sustained the Canaleses' fourth and fifth issues, we agree that the portion of the judgment awarding damages and interest against David and Angie cannot stand.

## III. PERMANENT INJUNCTION

In their sixth issue, the Canaleses contend that the trial court abused its discretion by awarding a permanent injunction because there is no imminent danger of loud music. They argue further that the court erred by enjoining Adrian Canales—David and Angie's minor child—in the absence of any liability finding against Adrian. We overrule the Canaleses' complaint regarding the injunction generally but sustain their complaint regarding Adrian.

## A. The Injunction

In the final judgment, the trial court included a permanent injunction:

> [T]he Enjoined Persons set forth below are permanently enjoined from playing music on the [Canaleses' property] that exceeds 85 decibels measured at the property line of [Vandenberg's property] that lies closest to the [Canaleses' property] after the person playing the music receives notice from a magistrate or peace officer that the music exceeds 85 decibels.

The court included David, Angie, and Adrian as "enjoined persons," along with "their agents, employees, tenants, or those persons in active concert or

11

participation with them who have actual knowledge of this injunction, by service or otherwise."

## B.      Standard of Review and Legal Principles

Injunctive relief is a remedy that is available to a claimant who prevails on a private-nuisance claim. *See Huynh v. Blanchard*, 694 S.W.3d 648, 672–73 at \*11 (Tex. 2024). "To be entitled to a permanent injunction, a party must prove (1) a wrongful act, (2) imminent harm, (3) an irreparable injury, and (4) the absence of an adequate remedy at law." *Id.* at 674. (quoting *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 792 (Tex. 2020)).

The decision to grant a permanent injunction is within the sound discretion of the trial court, and its action will be reversed only when a clear abuse of discretion is shown. *Id.* at 673. A trial court abuses its discretion by acting arbitrarily and unreasonably or misapplying the law to the established facts of the case. *Id.* at 674.

## C.      No Abuse of Discretion Regarding David and Angie

The Canaleses contend that there is no evidence of an imminent harm because the last complaint to the police was made in 2014. However, when a jury has found a nuisance "occurring and continuing up to or near the date of the trial, the trial court may, in equity, determine that the defendant has engaged in a settled course of conduct and may assume that it will continue, absent clear proof to the contrary." *Id.* at \*676 (quoting *State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 804 (Tex. 1979)). "The probability of the continuation of the prohibited practices is not a matter which is susceptible of direct proof, and injunctive relief is proper when the trial court finds it justified under the rules of equity, notwithstanding a

12

defendant's cessation of the activity or solemn promises to cease the activity."
*Tex. Pet Foods*, 591 S.W.2d at 804, *quoted in Huynh*, 694 S.W.3d at 676.

The trial court heard evidence that, despite David and Angie's awareness of their neighbors' complaints and numerous visits from the police, many of which resulted in municipal court citations or warnings, David and Angie continued to throw late-night parties with loud music that could be heard and felt 300 yards away. They only stopped in 2014 after the trial court issued a temporary injunction. Thus, the court had before it ample evidence to support a finding that future harm was imminent. *See Huynh*, 694 S.W.3d at 675–77 & n.32; *Tex. Pet Foods*, 591 S.W.2d at 804. The trial court did not abuse its discretion by enjoining David and Angie as described above.

The Canaleses' sixth issue is overruled as applied to David and Angie.

## D. Abuse of Discretion Regarding Adrian

A permanent injunction is "available only if liability is established under a cause of action." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 625 n.2 (Tex. 2011); *see also Valenzuela v. Aquino*, 853 S.W.2d 512, 514 n.2 (Tex. 1993) ("No final relief, including a permanent injunction, can be granted in a contested case without a determination of legal liability . . . .").

Vandenberg contends that the jury found Adrian liable for a temporary nuisance under Question No. 15, which asked, "Was the nuisance caused by the Canales Family permanent or temporary?" The jury answered, "Temporary." The jury was instructed to answer Question No. 15 only "If you answered 'Yes' to Question 13, and/or 14." Question Nos. 13 and 14, as discussed above, asked whether "David or Angie Canales intentionally create[d] a private nuisance" and whether "David and Angie Canales negligently create[d] a private nuisance."

13

We disagree with Vandenberg that the jury's "Temporary" answer to Question No. 15 was a finding of liability against Adrian. Without a finding of liability against Adrian, the injunction against him was an abuse of discretion. *See Gilbreath v. Horan*, 682 S.W.2d 454, 547 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) (abuse of discretion to enjoin a party against whom there was no finding of liability).

The Canaleses' sixth issue is sustained as applied to Adrian.

## IV.  SLANDER

In two issues, Vandenberg contends that the trial court erred by denying his requested jury questions on his claims for slander. Vandenberg first complains about a group of rejected questions concerning statements other than ones Angie made during a 911 call on the night that Vandenberg and David had a fistfight (the "non-911" slander claim); he next complains about a group of rejected questions concerning statements that Angie made during the 911 call.

The Canaleses contend that the trial court did not err by denying Vandenberg's questions regarding the non-911 statements because, among other reasons, the questions were not substantially correct. The Canaleses contend that the trial court did not err regarding statements Angie made during a 911 call because, among other reasons, no evidence supports the element of actual malice. We agree with the Canaleses and overrule Vandenberg's issues.

## A.    General Legal Principles for Submission of Jury Questions

A trial court must submit jury questions, instructions, and definitions that are raised by the written pleadings and the evidence. *Brumley v. McDuff*, 616 S.W.3d 826, 831 (Tex. 2021) (citing Tex. R. Civ. P. 278). "Concomitantly, a trial court must not submit claims or affirmative defenses that the pleadings and evidence do

14

not support, unless the parties tried the claim or defense by consent." *Id.* "When a trial court refuses to submit a requested instruction on an issue raised by the pleadings and evidence, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict." *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006).

The failure to submit an instruction is not a ground for reversal of the judgment unless the party complaining of the judgment has requested in writing and tendered a substantially correct instruction. *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002); *see also* Tex. R. Civ. P. 278. "Substantially correct" does not mean absolutely correct. *Placencio v. Allied Indus. Int'l, Inc.*, 724 S.W.2d 20, 21 (Tex. 1987). Nor does it mean that the instruction is merely sufficient to call the matter to the attention of the trial court. *Id.* "It means one that in substance and in the main is correct, *and that is not affirmatively incorrect*." *Id.*

We review the trial court's submission of the charge for an abuse of discretion. *Brumley*, 616 S.W.3d at 831. The omission of an instruction is reversible error only if the omission probably caused the rendition of an improper judgment. *Shupe*, 192 S.W.3d at 577; *see also* Tex. R. App. P. 44.1(a).

## B. The Refused Questions

Vandenberg requested the submission of a series of slander questions, which the trial court refused to submit. First, Vandenberg contends that the court should have submitted his Proposed Question Nos. 20–25 concerning seven statements that were made other than during the 911 call, i.e., the "non-911" statements. Proposed Question No. 20 asked, "Did Angie or David Canales publish any of the following statements with regard to Ed Vandenberg to anyone <u>other than</u> the 911 operator?" It instructed to the jury to answer "yes" or "no" to a list of seven specific statements. Proposed Question No. 21 asked whether each of the

15

statements was defamatory. Proposed Question No. 22 asked whether each of the statements was false. Proposed Question No. 23 asked whether Angie (i.e., only Angie) made each statement with actual malice. Proposed Question Nos. 24 and 25 asked about damages.

Next, Vandenberg contends that the trial court should have submitted his Proposed Question Nos. 10–15 concerning two statements Angie made during a 911 call on the night Vandenberg and David had a fistfight. Respectively, the proposed questions asked whether Angie published each statement, whether each statement was defamatory, whether each statement was false, whether Angie made the statements with actual malice by clear and convincing evidence, and the amount of damages and exemplary damages to award.

## C.   Non-911 Questions Not Substantially Correct

Regarding the non-911 statements, the first question asked whether "David or Angie" published each statement, and a later question inquired only about Angie's actual malice in making the statements. The questions do not ask about each of the defendants' liability separately. These questions suffer from the same defect discussed above in Part II.B of this opinion because the questions are ambiguous and could not support a judgment against either David or Angie. *See J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 640 (Tex. App.—San Antonio 1993, no writ); *see also Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 61 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *W & F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 45 (Tex. App.—Houston [14th Dist.] 2006, no pet.). In this regard, these questions were not substantially correct, and their omission could not have caused an improper judgment because their inclusion could not have

16

supported a judgment for Vandenberg on his non-911 slander claim, to the extent any were pleaded.[5]

## D.   911 Questions Not Supported by Evidence of Actual Malice

Vanderberg's proposed questions regarding Angie's allegedly slanderous statements to a 911 operator concern the events of December 4, 2012, when Vandenberg entered the Canaleses' property, shut off the electricity to the party barn, and got into a physical fight with David.  Because the issue of actual malice is dispositive, we focus our discussion of the evidence and law on the omitted question regarding actual malice.

### 1.  *Actual Malice Question*

Vandenberg's Proposed Question No. 13 would have submitted the issue of Angie's actual malice as follows:

QUESTION 13

Do you find by clear and convincing evidence that at the time Angie Canales made the statement in Question 10

> 1. Angie Canales knew it was false as it related to Ed Vandenberg, or
>
> 2. Angie Canales made the statement with a high degree of awareness that it was probably false, to the extent that Angie Canales in fact had serious doubts as to the truth of the statement?
>
> "Clear and convincing evidence" is that measure of degree of proof that will produce in the mind of the jury a firm belief or conviction as to the truth of the allegations sought to be established.

Answer "Yes" or "No" for each subpart to this question.

---

[5] In light of this disposition, we do not reach the parties' arguments concerning the sufficiency of Vandenberg's pleadings and evidence to support submission of the non-911 slander claim.

a.  He barged into our building and started vandalizing our building.

Answer: _____

b.  He has a gun, and he has it to my husband.

Answer: _____

## 2. Evidence

On the night of December 4, 2012, Adrian was practicing with new music equipment in the party barn along with David when Vandenberg entered their property and shut off a breaker box for the barn.  David and Vandenberg confronted each other outside the barn and began physically fighting.  David told Adrian to go inside and get a gun.  Angie was inside the home watching television when Adrian came in and told her to get the gun.

Angie called 911, and a transcript of the call was admitted as an exhibit. The call began:

Operator:   911.  What is your emergency?
Angie:   I need a cop out here right now.
Operator:   Okay.
Angie:   I'm fixing to shoot some mother fucker.
Operator:   Hello.  Where—where are you?
Angie:   I need a gun out here. [address]
Operator:   Okay.  Why are you threatening to shoot someone?
Angie:   He—the neighbor came.  He has a gun, and he has it to my husband.
Operator:   Okay.  What—what's your name, ma'am?
Ange:   Angie Canales.
Operator:   Okay.  He has a gun to your husband right now?
Angie:   Yes.  Oh, my gosh.

Angie said during the call repeatedly that that she had a gun in her hand and that she would shoot the man. Later, discussion of the gun continued:

> Angie: They're—right now I don't want to mess it up. And I have a gun. So I don't want to go out because I know I'm going to shoot somebody or my husband. So stay away from me.
>
> Operator: You cannot—you—I cannot give you permission to shoot someone. You're not—your life is not currently in danger. And if he doesn't have a gun to your husband right now, his life is not in danger.
>
> Angie: I cannot see out there. There is no lights. I don't know if he has a gun to my husband. There is no lights.

After Angie informed the operator that she did not know who the assailant was and that he had left the property and was walking along the main road, the following exchange occurred:

> Operator: And the next—like, if this ever happens again, don't go outside and engage him.
>
> Angie: I'm just—we—
>
> Operator: Just call the police.
>
> Angie: Listen to me, he barged into our building and he started vandalizing our building.
>
> Operator: Okay.
>
> Angie: He barged in and vandalized it, and my husband and my kid were in there practicing.
>
> Operator: Okay.
>
> Angie: He vandalized it. He's the one that came in here.

Vandenberg testified that he had never met or talked to the Canaleses before that night. Angie testified that when Adrian ran in the house, he was frantic and screaming. She testified about what she heard Adrian say and the conclusions she drew:

19

There was a man beating up his dad, and I heard gun. So, when I hear gun, I'm thinking, okay, I need to get a gun or they have a gun. I heard gun. Adrian screams gun. Mom, there's a man beating up Dad. Get a gun or there's a gun.

. . . .

At the time, I mean, I'm—you know, my—my kid is running in crazy and I hear his dad getting is beat up and I hear gun. So, when his Dad is getting beat up, I'm thinking okay. There's—you know, I'm—we're not used to handling guns. So, when I hear gun, I'm thinking okay. Somebody has a gun to David or something.

She testified that it "happened so fast and I was scared." It was dark outside, and Adrian was frantic. Angie "went from zero to a hundred." She felt her, her child's, and her husband's lives were in danger.

She explained that when she said on the 911 call that she did not know if Vandenberg had a gun, at that moment she could not see outside. When asked if Vandenberg barged into the barn, she testified:

| Angie: | At that moment, that's what I believed. So, that's what I said. |
|---|---|
| Question: | But you had no basis to believe that, did you? You just said it. |
| Angie: | When my child is running in and tells me, I know they're in the building, and somebody went in there fighting his dad, I said barge. That's what I'm assuming happened. |

Angie confirmed at trial that she never actually saw a gun when she went outside.

### 3. *Analysis*

Actual malice requires at a minimum that the "defendant have, subjectively, significant doubt about the truth of his statements at the time they are made." *Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002). To prove actual malice in a defamation case, "the plaintiff must offer clear and convincing affirmative proof to

20

support a recovery." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 124–25 (Tex. 2000) (quoting *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989)). It is not enough for the jury to disbelieve the defendant's testimony; discredited testimony does not constitute clear and convincing evidence of actual malice. *Id.* at 124. Indeed, a defendant may be able to negate actual malice conclusively by their own testimony. *Bentley*, 94 S.W.3d at 596. "An understandable misinterpretation of ambiguous facts does not show actual malice, but inherently improbable assertions and statements made on information that is obviously dubious may show actual malice." *Id.* "A failure to investigate fully is not evidence of actual malice; a purposeful avoidance of the truth is." *Id.*

On appeal, Vandenberg cites to no evidence to support a finding of actual malice other than the transcript of the 911 recording itself. He contends that Angie's statements "show that her intention was malicious, seeking to either justify her intention to shoot [Vandenberg], or exaggerating the situation and seeking that the police shoot [Vandenberg]."

At best, the evidence shows that Angie's statements about Vandenberg having a gun to her husband and vandalizing their property were understandable misinterpretations of ambiguous facts that she did not fully investigate before making the statements. Once she did investigate, she informed the 911 operator that she did not see a gun. The evidence was undisputed that before Angie made these statements, Vandenberg and Angie had never met or spoken. She knew only that a neighbor had entered her property and assaulted her husband, that the electricity had been shut off, and that her son came into her house frantically screaming about a gun. Whether Vandenberg's conduct of reaching into a breaker box and turning off the power amounted to entering a building and vandalizing it, similarly, was an understandable misunderstanding of ambiguous facts. *Cf. Saks &*

21

*Co.*, *LLC v. Li*, 653 S.W.3d 306, 315–16 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (no evidence of actual malice when the defendants reported an employee to the police for theft after the employee allowed customers to use credit cards belonging to other people to make purchases).

Considering all of the admitted evidence, the trial court could have concluded that there was legally insufficient evidence to support a finding of actual malice in Vandenberg's favor by clear and convincing evidence, and thus, Vandenberg's slander claim based on the 911 statements was not raised by the evidence. The trial court did not abuse its discretion by refusing to submit Vandenberg's questions about his claim for slander based on Angie's statements to the 911 operator.

## E. Unpreserved and Waived Complaints About Submitted 911 Question

Vandenberg contends that the trial court "erred in submitting a criminal type question on the issue of Angie Canales' 911 report, which required intent for a 'yes' finding by the jury." Vandenberg also contends, in two sentences from his 63-page brief, that the jury's "no" finding to this question was against the great weight and preponderance of the evidence.

The trial court included in the jury charge the following Question No. 17: "Did Angie Canales knowingly and with the intent to deceive, make false statements to the 911 operator on December 4, 2012?" The jury answered "no."

Vandenberg did not object to the inclusion of this question in the jury charge; indeed, he told the trial court, "[W]e appreciate the submission of the question." He merely requested his other slander questions be submitted "as well" and "in addition to the question of 911." Thus, Vandenberg did not preserve any error regarding the submission of this question. *See, e.g.*, *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) ("[A]ny complaint to a jury charge is waived unless

22

specifically included in an objection. . . . A party must make the trial court aware of the complaint, timely and plainly, and obtain a ruling."); *see also* Tex. R. Civ. P. 274; Tex. R. App. P. 33.1.

To the extent Vandenberg has asserted on appeal and preserved a factual sufficiency challenge to this question,[6] he has waived it due to inadequate briefing. *See St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 215 (Tex. 2020) (noting that "courts of appeals retain their authority to deem an unbriefed point waived"); *see also* Tex. R. App. P. 38.1(f), (i).

Vandenberg's issues are overruled.

## V. CONCLUSION

Vandenberg did not secure a valid liability finding to support (1) the award of mental anguish damages against Angie and David, or (2) the permanent injunction against Adrian. Thus, we modify the trial court's judgment to delete this relief. In all other respects, we overrule the parties' issues and affirm the trial court's judgment as modified.

/s/    Ken Wise
       Justice

Panel consists of Justices Wise, Zimmerer, and Poissant.

---

[6] The Clerk's Record does not contain a motion for new trial filed by Vandenberg, which is required to preserve a factual sufficiency challenge. *See, e.g.*, *In re D.T.*, 625 S.W.3d 62, 75 n.8 (Tex. 2021) ("Preservation of a factual-sufficiency challenge requires a motion for new trial.").

23